THOMSON, Judge, &c. use, *vs.* SEARCY and FEARN.

6p 393
97 564

1. In debt on an administration bond, it is no valid objection to the declaration, that it does not disclose that the assets in the hands of the administrator, were chargeable with the demand sued on, or that they were of value sufficient to discharge it, after the payment of all claims entitled to priority.

2. Nor is it a good objection to the declaration, that the names of all the plaintiffs, in a judgment recovered against the administrator, are not set forth. *Semble*, that the former judgment is not the foundation of the action on the bond, and need only be recited as a fact, the existence of which, is indispensable to enable the plaintiff to recover.

3. According to the literal import of an administration bond, it is forfeited, when the administrator wastes the goods of the intestate, to the prejudice of a creditor. Yet no one can be regarded as a creditor for the purpose of subjecting the administrator to a personal accountability, who has not first made out a title, by recovering a judgment to be levied *de bonis intestatis*. Therefore, also

4. An action can be well maintained upon the administration bond against the sureties, after the plaintiff's claim has been ascertained by judgment as aforesaid, upon an allegation, that the administrator has wasted more than an equal amount of the goods and chattels of the intestate : and that, also, before a *devastavit* is fixed upon the administrator, by a judgment recovered against him personally.

5. [The same rule prevails at this time in Virginia, Kentucky, New York, Connecticut and Massachusetts; and in Indiana, on the bond required of a justice of the peace.]

6. [The rule also prevails in the King's Bench and common

2c

pleas, where the executor or administrator is alone sought to be charged.]

7. [In Ohio and South Carolina, a *devastavit* must be first ascertained by judgment previously obtained—though in Ohio an action may be maintained against the surety, upon the bond of a guardian without first obtaining judgment against the principal.]

8. But the sureties to an administration bond cannot be charged beyond the amount of assets of the intestate, which came to the hands of the administrator, and therefore in an action on the bond against the sureties, the jury must not only find the issue for the plaintiff, but also the extent to which the administrator has wasted the assets; and

9. Though the administrator, when sued alone, may be charged for a *constructive waste*, yet to authorize a recovery against his sureties, an *actual devastavit* must be shown.

Error to the Circuit court of Madison county.

Debt, on administration bond. At the Spring term, eighteen hundred and thirty-seven of said court, John C. Thomson, judge of the County court of the county aforesaid, who succeeded Samuel Chapman, former judge of said court, and who sued for the use of John Thurman,—declared against Jesse Searcy and Thomas Fearn, for that, the said Jesse Searcy, theretofore, to wit, on the twelfth day of February, eighteen hundred and twenty-two, in said county, was duly appointed administrator of all and singular the goods and chattels, rights and credits of one Charles Burrus, then lately deceased, intestate; whereupon, the said Jesse, and the said Thomas Fearn, (with a certain Henry Cook, who was not sued in the action,) made their certain writing obligatory, of said date, in said county, signed with their names, sealed with their seals, a copy of which was shown (the original being

on file in the office of the clerk of the County court of said county, and not in the plaintiff's power to produce,) and therein and thereby acknowledged themselves to be held and firmly bound to said Samuel Chapman, judge of the county court of Madison county, State of Alabama, and his successors in office, in the penal sum of two hundred thousand dollars; for which payment, well and truly to be made, said defendants, and said Cook, bound themselves, and each of them, their heirs, &c.—which said writing obligatory was subject to a certain condition there under written: That, whereas the said Jesse Searcy had been duly appointed administrator of the estate of Charles Burrus, deceased, if the said Jesse Searcy should well and truly perform all the duties which then were, or by law might be required of him, as such administrator, then the said obligation to be void, else to remain in full force and virtue.

And the plaintiff averred that the said Samuel Chapman was at the time of executing said writing obligatory, judge of the County court of Madison county aforesaid, and that he did, on a certain day resign the office of judge of the said County court; whereupon, the said John C. Thomson, was, to wit, on the day and year last aforesaid duly appointed in his stead, and that the said John C. Thomson was, at the time of the institution of this suit, and had constantly continued to be, up to that time, the judge of the County court of said county, and the successor of the said Samuel Chapman, as judge of said County court.

And the plaintiff averred, that after said defendants had executed their said bond, the said John Thurman, on the seventh day of April, eighteen hundred and twenty-nine, in the Circuit court of said county of Madison, caused a suit to be brought in the names of Isaac Lane, and others, for his, the said John Thurman's use, against the said Jesse Searcy as administrator of the said Charles Burrus; and on the twentieth

day of November, eighteen hundred and twenty-nine, recovered a judgment, in the names of said Isaac Lane, and others, for the use of him, the said John Thurman, in the said Circuit court, against said Jesse Searcy, administrator as aforesaid, for the sum of seventeen hundred and eighty dollars and seventy-five cents, debt, three hundred and forty-six dollars and twenty-five cents damages, besides costs; to be levied of the goods and chattels, which were of the said Charles Burrus, in the hands of the said Jesse Searcy to be administered.

And the plaintiff averred, that said judgment remained in said court, entirely unreversed and unsatisfied, and that divers goods and chattels of the said Charles Burrus came into possession of the said Jesse Searcy, as administrator aforesaid, to be administered; of great value, to wit, of the value of ten thousand dollars, to wit, in the said county,—more than sufficient to satisfy said judgment. Yet, the said Jesse did not well and truly administer the same, and did not pay said judgment, or any part thereof, with the avails of the goods and chattels last aforesaid, or otherwise, but wasted the same and converted them to his own use, to wit, on the first day of December eighteen hundred and twenty-nine, in the county aforesaid.

And the plaintiff averred, that said Jesse Searcy did not well and truly perform all the duties which were by law required of him, as administrator aforesaid, but violated said condition as above set forth.   By means of which said several premises, the plaintiff had sustained damages to a large amount, and by means of which premises also the said writing obligatory became forfeited; and thereby an action had accrued to the said plaintiff, to demand of and from the said defendants, the sum of two hundred thousand dollars above demanded.   Yet, the said defendants had not, nor had said Henry Cook, paid said plaintiff said sum of mo-

ney, above demanded, or any part thereof, although often requested, but the same to pay had failed, &c.

And the said defendants, defended the wrong and injury, when, &c. and said that the said declaration and the matters therein contained, in manner and form as the same were stated and set forth, were not sufficient in law for the plaintiff to have or maintain his aforesaid action thereof against said defendants, and that said defendants were not bound by the law of the land to answer the same, which they were ready to verify; wherefore, for want of a sufficient declaration in that behalf, the defendants prayed judgment, and the plaintiff might be barred from having or maintaining his aforesaid action thereof against them, &c.

And the plaintiff joined in demurrer.

And afterwards, to wit, at the Fall term of said court of the same year, came the parties, and thereupon the defendant's demurrer to the plaintiff's declaration, being argued and fully understood: It was considered by the court, that the plaintiff take nothing by his plaint, and that the defendants go thence and recover against the plaintiff their costs by them in and about their defence in that behalf expended, &c. From this judgment there was a writ of error,

And at this term the plaintiff assigned the following errors: to wit:

That the court erred in sustaining the demurrer of the defendants to the plaintiff's declaration, and

That judgment below should have been rendered in favor of plaintiff against defendants.

*J. W. McClung*, for plaintiff in error.
*Hopkins & Parsons*, contra.

COLLIER, C. J.—The plaintiff brought an action of *debt*, in the Circuit court of Madison, against the defendants. By the record, it is shewn that Jesse Searcy was in February, 1822, in that county, duly appointed ad-

ministrator of the goods and chattels, &c. of Charles Burrus, then lately deceased, intestate, and that he executed an administration bond, in legal form, with Thomas Fearn and Henry Cook as his sureties, (the latter of whom is not here sued.)

The plaintiff then avers, that on the seventh day of April, eighteen hundred and twenty-nine, John Thurman, for whose benefit this action is brought, caused a suit to be instituted in the name of Isaac Lane and others, for his use, against Jesse Searcy, as administrator of Charles Burrus deceased, and on the 20th November, of the same year, recovered a judgment according to the demand of the writ, for the sum of seventeen hundred and eighty 75-100 dollars for the debt, three hundred and forty-six 25-100 dollars for damages, besides their costs, to be levied *de bonis intestatis* in the hands of the administrator, to be administered. *It is also averred*, that the judgment thus recovered, remains entirely unreversed and unsatisfied, and that divers goods and chattels, &c. came into the possession of Jesse Searcy to be administered, to wit, of the value of ten thousand dollars—more than sufficient to satisfy the judgment above recited. Yet the administrator did not pay and satisfy that judgment, with the avails thereof, but wasted the same and converted them into his own use, to wit, on the —— day of December, eighteen hundred and twenty-nine, at &c. *It is then averred*, in due form, that the administrator did not well and truly perform all the duties required of him, &c. By means of all which, the plaintiff, for the use, &c. hath sustained damages, &c. and by means of which, the bond of the defendants has become forfeited, &c.

To the declaration, the defendants demurred, and the demurrer being sustained, and judgment thereon rendered against the plaintiff, a writ of error has been prosecuted to this court for its reversal.

It is no valid objection to the declaration, that it does not disclose, that the assets which came to the possession of the administrator, were justly chargeable with

the demand in controversy, or that they were of value sufficient to discharge it, after the payment of all claims entitled to priority. Let it be conceded *ex gratia argumenti*, that there are debts, which the right to have satisfied, imposes a paramount lien upon the estate of the intestate, as against the creditor now complaining, yet the disclosure of such a fact if allowable, must be made in a plea. It is entirely sufficient for the plaintiff to set forth such a case, as if proved, would entitle him to recover, without negativing in advance, matters which rest more particularly within the defendants knowledge. It is not for the plaintiff to anticipate every affirmation that may be made in the defence, and interpose in his declaration a formal denial. Such a course of pleading would be, not only objectionable, as calculated to overcharge the record, but in itself eminently untechnical.*

Nor can the legal sufficiency of the declaration be successfully assailed, for the omission to disclose the names of the "*others*," who with Isaac Lane, for the use of Thurman, recovered the judgment against Searcy. It is more than possible that their names do not appear in the record of the suit—if they do not, the recovery is not void, and the record would be admissible evidence. But even if the "*others*" are shewn *eo nomine* by the judgment, yet the declaration would be sufficiently descriptive of the case; that judgment is not the foundation of this action, but is only recited as a fact, the existence of which is indispensable to the plaintiff's right to recover, and according to a correct practice, it is well described, when so referred to, as to be identified with certainty. That this has been done, we think clear, and consider it no objection to the maintenance of the present action, that it is brought for the use of the party, who was the beneficial plaintiff in the judgment.

This brings us to consider the remaining, and most

---

* 13 Johns. R. 437; 1 Bay's R. 456.

material exception taken by the defendants counsel to the declaration,—Can an action be brought upon the administration bond against the sureties, after the creditors claim has been ascertained by judgment, upon the allegation of its non-payment, and that the administrator has wasted more than an equal amount of the goods and chattels, &c. of the intestate, unless a *devastavit* has been first fixed upon the administrator, by a judgment recovered against him personally.

In order to a decision of this question, reference must be had to the condition of the bond, that we may determine what are the stipulations of the obligors. From the recital of the bond in the declaration, we learn that it was taken in obedience to the act of *June*, eighteen hundred and twenty-one,—and its condition must be as follows: "The condition of the above obligation is such, that whereas the above bounden Jesse Searcy, has been duly appointed administrator of the estate of Charles Burrus, deceased. Now if the said Jesse Searcy shall well and truly perform all the duties which are or may be, by law required of him, as such administrator, then, the above obligation to be void, otherwise to remain in full force." The obligation imposed upon the principal, obliged him to a performance of the duties required by the laws then extant, or such as might be thereafter enacted. The undertaking of the sureties is of a corresponding extent, viz: that the administrator shall faithfully perform the condition of his bond, and if he fails, then, they will answer for his default. The breach alleged is the non-payment of a debt, recovered against the administrator *de bonis intestatis*, with which it is insisted he became personally chargeable; because he wasted the assets of the estate, to a greater amount in value. The sufficiency of this breach must depend upon the nature and extent of the duties which the law devolves upon an administrator. Without therefore entering at large upon an inquiry into his office, we will proceed to shew that it is a paramount duty of an administrator, honestly to appropriate the assets which come to

his possession, to the debts of the intestate. The twenty-seventh section of the act of eighteen hundred and three, after enacting that personal estate not bequeathed shall descend to, and be distributed among heirs in the same manner as lands descend by that act, contains a *proviso* as follows: "*Provided*, that the goods and chattels, or personal estate of any person deceased, whether testator or intestate shall stand chargeable with the payment of all the just debts and funeral expenses of the deceased, and the charges of settling the said estate, &c." We need not inquire what an administrator was required to do by the common law, for here is a positive declaration, that the personal estate of the intestate that comes to his hands, must be first applied to the discharge of his debts; and this is a duty coming within the express terms of the condition of the administration bond, and cannot, it would seem, be neglected without causing its forfeiture.

Conceding that where the assets are ample, the non-payment of a debt to which the estate of the intestate was liable, would be a literal breach of the bond, it is argued for the defendant, that no action will lie against the sureties until it is ascertained by verdict and judgment, that the administrator had wasted the goods and chattels, &c. that came to his hands. That such a conclusion resulted from the nature of the common law remedy, by which a *devastavit* was fixed, as well as from the consideration, that the imputation of mismanagement of assets by the administrator, was a charge *quasi* criminal.

Anciently in England, if the sheriff returned *nulla bona* and a *devastavit* to a *fieri facias de bonis testatoris aut intestatis*, sued out on a judgment against an executor or administrator, it was *sometimes* the practice to sue out a *capias ad satisfaciendum* or a *fieri facias de bonis propriis*, against the executor or administrator. But the better and more frequent method was, to sue out a *scire facias*, and obtain an award of execution before suing out the *fieri facias de bonis propriis*. The most

6p. 47

*usual* practice however, was upon the return of *nulla bo-na* to sue out a special *fieri facias de bonis testatoris aut intestatis*, with a clause therein *et si tibi constare poterit*, that the goods &c. had been wasted, then to levy *de bonis propriis*. And this seems to have been the practice of the *King's Bench*, until the time of Charles the First; but in the *common pleas*, a practice prevailed from an early day upon the suggestion of a *devastavit* in a special writ of *fieri facias*, to direct the sheriff to inquire by a jury, whether the executor or administrator had wasted the goods, and if the jury found affirmatively, then a *scire facias* was sued out against the executor or administrator, and unless he made a good defence thereto, execution was awarded *de bonis propriis*. It afterwards became the practice of both courts, for the sake of expedition, to incorporate the *fieri facias inquiry* into one writ, thence called a *scire fieri inquiry*. This writ recites the *fi. fa. de bonis testatoris aut intestatis*, the return of *nulla bona;* and then suggesting that the executor or administrator had converted the goods, &c. to the value of the debt and damages recovered, commands the sheriff to levy the debt and damages of the goods &c. of the testator or intestate, in the hands of the executor or administrator, if they could be levied thereof, but if it should appear to him, by the inquisition of a jury, that the executor or administrator had wasted the goods, &c., then to summon him to appear, &c.[*]   But the most usual mode of proceeding both in the *King's Bench* and *common pleas*, is by an action of debt suggesting a *devastavit*.[†]

And the correct course of procedure, where the *executor or administrator is alone sought to be charged,* is that we have mentioned as most usual in England at this day. Yet we cannot conceive why a creditor should be forced to pursue this remedy, before he is allowed to prosecute an action upon the statute obligation. The latter part

---

[*] See form of writ, 1 Saund. R. 303.      [†] 1 Saund. R. 219, note 7.

of the thirteenth section of the act of June, eighteen hundred and twenty-one, after giving the form of an administration bond, proceeds: "Such bond shall not become void on the first recovery, and may be put in suit, and prosecuted from time to time, against all or any one or more of the obligors, in the name and at the costs of any person or persons, injured by a breach thereof, until the whole penalty shall be recovered thereon." We have already shewn, that according to the literal import of the bond, it is forfeited whenever the administrator wastes the goods &c. of the intestate, to the prejudice of a creditor. Yet no one (however just his demand,) can be regarded as a creditor, for the purpose of subjecting the administrator to a personal accountability, who has not first made out a title, by recovering a judgment to be levied *de bonis intestatis,—Weulk vs. Judge of Monroe County court;* Burnett vs. Harwell;† Eaton vs. Benefield;‡ Robbins, judge, &c. vs. Hayward;§—to have a portion of the assets appropriated to his benefit. But we can discover nothing either in reason or legal principle, requiring any further proceeding against the administrator, before the bond is suable against any or all its obligors.

Nor can we consider that there is any force in the objection, that the charge of a *devastavit* against the administrator, is an imputation of a criminal nature. The action of debt upon the bond, strictly speaking, is *ex contractu*, though in order to a recovery, it may be necessary to prove facts which the common law considered sufficient to shew, that the administrator was guilty of a *tort*. Yet it does not necessarily follow from thence, that if the administrator be liable, that he is reprehensible in morals; he may have incurred a responsibility under an ignorance of his duties. But grant that he has been criminally faithless in the performance of his trust, and no objection is furnished to the maintenance

---

*2 Porter's R. 538 ;  †3 Leigh's R. 89 ;
‡2 Blackford's R. 52 ;  §16 Mass. R. 524.

of the action.  How often are breaches of contract
shewn by proof of such facts, as evidence an entire des-
titution of moral principle, and frequently accompanied
with force; yet in such cases it has never been ques-
tioned, that the breach cannot be redressed in an action
*ex contractu*, in consequence of the defendant's great cul-
pability.  For what have the sureties undertaken, if not
for the honest discharge of the duties of the administra-
tor?  And what objection is there in principle, to a cred-
itor assigning as a breach, that the administrator has
not done that for which his sureties stipulated?  The
declaration in the case at bar does nothing more—it
charges a wrong upon the principal, and calls upon the
sureties to repair the injury it has occasioned, according
to their stipulations.

Thus far have we examined the arguments, upon
what seems to us to be correct legal principle, we will
now examine it with reference to authority.

In *Braxton*, executor, &c. vs. *Winslow*, et. al,* the de-
fendants in error sued an action of debt against the
sureties, in an executor's bond, to subject them to the
payment of a bill of exchange, of which the testator of
their principal, was the drawer.  Oyer of the bond and
condition was craved in the court below, and conditions
performed pleaded.  The replication traversed the plea,
and charged a breach in the executor's not having ad-
ministered according to law, and having wasted the as-
sets in the payment of debts of an inferior dignity, af-
ter the notice of protest for non-payment of the bill of
exchange.  Two questions were raised in the Court of
Appeals,—First, whether an action could be maintained
*at all* for the benefit of a creditor upon an executor's
bond,—Second, whether the action could be maintained
before a judgment first recovered by the creditor against
the representatives of the debtor, and an execution and
return of *nulla bona* thereon.

---

* 1 Wash. R. 31.

The court considered it clear, that the action was maintainable for the benefit of a creditor. And in respect to the second question, after having determined that the bond was prematurely put in suit, because no judgment had been recovered upon the bill of exchange, the court go farther and decide, that a judgment creditor could not have the bond sued against the sureties, unless a *devastavit* was first fixed upon the executor by a suit prosecuted against him on his judgment *de bonis intestatis.* And this conclusion was attained from a course of reasoning as follows: That the suggestion of a *devastavit* may be likened to a criminal prosecution, and that an executor shall not be presumed guilty of it, until it is found against him by the verdict of a jury—that though the statute of Virginia did not inhibit the creditor from going against the sureties in the first instance, yet it was an established principle of construction, that where a statute has given a new remedy, without pointing out the mode in which it is to be attained, the rules of the common law, and the practice of the courts, founded upon the reason of the thing, shall be pursued.

That the common law may be invoked, to aid in the interpretation of a statute, is a reasonable and just rule; but where a statute is plain and unambiguous in its terms, there is no room for the operation of the rule. If it is sought to charge an executor at common law, we have already said, that the appropriate remedy is, an action of debt, suggesting a *devastavit:* but this was not the character of the proceedings in that case. The statute of Virginia, like our own, declares, in express words, that the bond may be put in suit, for the benefit of creditors, &c. And the act itself being free from ambiguity, in considering it, the mind is naturally led to the enquiry, what obligation was imposed by the bond, upon the principal and his sureties, and what amounted to a breach of its condition. By thus reasoning, the conclusion would have been attained, that to maintain an action upon the bond, it was only necessary to shew a judgment, *de bonis testatoris*, and a waste of the assets

2D

by the executor. The statute gave a remedy upon the bond, and the creditor, who had recovered his judgment against the executor, might put it in suit, or adopt such proceedings as were before in use, and unrepeated by the act. And the statute being silent as to the particular remedy it afforded, it was proper to refer to the common law, to ascertain what was the appropriate action upon such a liability. But it is indeed difficult to conceive, what legal conclusion resulted, from a consideration. of the course to be pursued at common law, in order to fix a *devastavit*, upon the executor.

This reasoning, recondite and farfetched as it may seem; however inconclusive it has, at different times, been regarded by the subordinate courts, has, whenever the same question has arisen, been approved by the Virginia court of Appeals. In *Call vs. Ruffin*,* it was recognized; and in *Gordon's adm'rs vs. the Justices of Frederick*.† The case of *Braxton, ex'r, &c. vs. Winslow, et. al.* was received, and reaffirmed; the court merely amplifying the argument employed by the bench in the latter case, and offering as an additional reason, why a *devastavit,* should be established, in a separate suit against the administrator, that by a law of that state, no security for an executor or administrator, was chargeable beyond the assets of the testator or intestate, on account of any omission or mistake in pleading, by the executor or administrator. And it was, therefore, proper that the amount of the assets wasted, should be ascertained by a verdict, and judgment, before the sureties were called on. We cannot conceive why this latter consideration should have had any influence; for the extent of the liability of the sureties, could have been as readily ascertained, in an action on the bond, as any other material fact.

Since the decision of *Gordon's adm'rs vs. the Justices of Frederick*; it may be remarked, the law of Virginia

---

*1 Call's R. 333.     †1 Munf. R. 1.

has been changed, by a statute enacted in 1814, which dispenses with the intermediate suit, to fix a *devastavit*.[*]

In 1829, an act was passed, by the General Assembly of Kentucky, authorising the suggestion of a *devastavit*, and the assignment of other breaches, in an action on the administration bond. Previous to that time, it was held in that state, that it was necessary to bring a second suit, and convict the executor or administrator of a *devastavit*, before the sureties could be sued on the bond—*Clarke vs. the Commonwealth, &c.*[†]

So also, in Ohio, it has been determined, that the executor or administrator, must first be found guilty of a *devastavit*, before the bond can be sued against the sureties. And for the reasons on which the court founds its opinion in *Gordon's adm'rs vs. the Justices of Frederick*,—see *Stewart & Chapline vs. the Treasurer of Champaigne county, use &c.*[‡]

In *Call vs. Ruffin*, it was decided, that a guardian's bond, stood in a different predicament, from an executor's or administrator's, and that it was competent to put it in suit against the sureties, without having first obtained a judgment against the principal. And in *Moore vs. Waller's heirs*,[§] it was held, that the statute, which gave an action on the administration bond, was merely cumulative, and did not oust the Chancellor of his jurisdiction in such cases; and in chancery, no previous suit was necessary, to ascertain the extent of the executor's liability, before a resort could be had to the sureties. So in *Meade et. al. vs. Brooking*,[‖] it was determined that after a judgment against an executor or administrator, as such, a *fieri facias*, and return of *nulla bona*, an action against him alone, on his administration bond, could always have been maintained, without any previous suit, suggesting a *devastavit*. These three.

---

[*]Vide Revised Code, ch. 104; sec. 63; Ed. 1819: and Allen vs. Cunningham—3 Leigh's R. 395.

[†]5 Mon. R. 99.—See also 1 J. J. Marshall's R. 183—2 Ib. 19.

[‡]4 Ohio R. 98.   [§]1 Marshall's R. 489   [‖]3 Munf. R. 548

cases do not appear to us to harmonize with the cases of *Braxton adm'r, &c. vs. Winslow, et. al.* and *Clarke vs. Commonwealth, &c.* The conversion of the estate of the ward, by his guardian, is quite as much a *tort*, as the wasting of the assets, by an administrator; and if, in the latter case, it be necessary to fix a personal responsibility, before the sureties can be called on to make good the loss, it is difficult to conjecture a reason, why the same rule should not obtain in the former case. So, if at law, the intermediate suit cannot be dispensed with, it would seem that equity could not hold it unnecessary, and offer to a party injured, a remedy against the sureties in the bond. That equity might give an ancillary remedy, or act preventively, by inhibiting the removal of property, until rights to be sought against the sureties, could be litigated and determined, would seem reasonable—but that, that tribunal can exercise plenary jurisdiction in such a case, (the law *forum*, being open, to administer redress,) may well be questioned. And the case of *Meade et. al. vs. Brooking*, greatly weakens the authority of *Braxton, adm'r. vs. Winslow, et. al.* by deciding that it is competent to try the question of a *devastavit*, in a suit on the bond, against the administrator. If it be regular to determine that fact, where the principal is a party, there can be no conceivable reason, why it may not also be litigated, where the sureties are made defendants, unless there be potency in the arguments, founded upon the statute, that the sureties are to be liable, only to the extent of the assets received by the administrator, and that a *devastavit* being a tort, is not triable against the sureties, on their contract.

Again: at common law, if an executor committed a *devastavit*, and died, his executor was not chargeable for the waste, upon the principle, that it was a personal tort, which died with the person.*

*Tucke's case—3 Leon's R. 241. Browne vs. Collins—1 Vent's. R. 292. 1 Saund. R. 219, note 7. Anthony vs. McCall—3 Blackford's R. 86.

If it be necessary, then, to convict the executor or administrator, of a *devastavit*, before suing on the bond, his death would certainly deprive the party, who had a right to complain of it, of a remedy, at least at law. In Kentucky they obviate the difficulty by allowing the sureties to be sued in equity, without having successfully prosecuted the intermediate suit, against the administrator. We have already questioned the general jurisdiction of that court, over the subject. .

If the administrator has used the assets, so as to make a profit to himself, there is no doubt, but his personal representatives may be proceeded against, in equity— *Price vs. Morgan.** Yet, 'it may well be questioned, whether, if the *devastavit* be the result of negligence or inattention, on the part of the executor, relief could be had in any *forum*, against the representative of an executor or administrator. The consideration that the sureties would not be liable, at least at law, upon the administration bond, if their principal dies before he is charged, is certainly entitled to weight, in determining whether the intermediate suit is essential.

But we are not left to disprove, by the force of argument, or indirect authority, the necessity of a second suit, in order to fix the *devastavit*, before proceeding against the sureties on their bond: For decisions to the point, equal in respectability and numbers, to those cited, are before us.

In the case of *the People vs. Dunlap*†, an action of debt was brought, against the defendant, as a surety in an administration bond, suggesting a *devastavit*, by the administratrix. The court determined, that the nonpayment of a judgment, obtained against the administratrix, might be assigned as a breach of the condition of the bond. In the opinion, this language is employed: "What is a forfeiture of the bond? Most certainly, an unfaithful administration of the estate of the intestate,

---

*2 Chan. Cases, 217.          †13 Johns. R. 437.

is not applying the goods, chattels, and credits of the deceased, to the payment of his debts." Again : "A conversion of the effects of the intestate, to the private use of the administrator, leaving the debts unpaid, is a violation of the trust reposed in the administrator, and a breach of the condition of the bond, in not administering the goods, chattels, and credits, according to law."

This is an authority to shew, that the criterion by which the liability of the sureties is ascertained, is the condition of their bond, without regard to the proceeding at common law, to subject their principal, de bonis propriis.

So in *Willey vs. Paulk, et. al.*[*] debt was brought on a probate bond, against the defendants, as the sureties of an executor. The court held, that though the defendants were not parties to the suit, against the executor, yet they were privies in contract ; and that the case of principal and surety, according to *Pothier* is not within the rule *res inter alios acta.* Further : the creditor has established his claim in due course of law, and that there can be no doubt of his right to sue the bond against the sureties, and recover for a *devastavit.* The editor of Wheeler's Abridgment, vl. 5, p. 346, cites *Jones vs. Anderson,*[†] to the same effect. We have not the volume, in which the case is reported, before us, and the editor merely notices it as deciding the point, that no suit can be brought upon an administration bond, against the sureties, until the administrator has been called to account, and a judgment against him. So that we are unprepared to say whether it determines any other principle.

And in *Coney, Judge, &c. vs. Williams, et al.*[‡] an action of debt was brought on the administration bond ; to which the defendants, (having set out on oyer, the bond and condition) pleaded performance generally. The plaintiff replied, a judgment recovered against the ad-

---

[*] 6 Conn. R. 74.     [†] 4 McCord's R. 113.     [‡] 9 Mass. R. 114.

ministrator, and its non-payment, though they had in their hands sufficient assets for that purpose. The court say—"Whatever may be the construction in England, it must be considered as settled with us; and so is the practice, that the non-payment of a debt, after it has been ascertained, by a judgment of court, or by commissioners, is a breach of the condition of an administration bond, as an unfaithful administration."*

The case of *the Archbishop of Can. vs. Willis,*† has been relied on, as authority to shew that the sureties cannot be sued, until the administrator is convicted of a *devastavit.* That point did not arise in the case. The only point adjudged in regard to a creditor, is, that the terms of the condition of the bond required the administrator to render his account to the Ordinary; and that the non-payment of a debt, was not a breach.

In *Greerside, &c. vs. Benson, &c.*‡ Lord Hardwicke recognized a judgment on an administration bond, at the suit of a creditor, and made it the basis of a decree.

And in *the Archbishop of Can. vs. House,*§ Lord Mansfield, sustained by all the Judges, suffered a suit to proceed on an administration bond, for the benefit of a creditor; so that the case, in *Salkeld,* which has been cited at the bar, and referred to in the case, in Ohio, as an authority for its judgment, we discover, has been, itself, overruled.

In Indiana, a justice of the peace, is required to give bond, " with good freehold security, for the faithful discharge of his duty, and for paying over, on demand, to the proper person, authorized or entitled to receive the same, all moneys that might come into his hands.." On such a bond, the Supreme court of that state, adjudged it competent, to sue the principal and his sureties, and to recover for " all acts of the justice committed, by virtue of his office, and for which, exclusively of the bond,

---

*14 Mass. R. 105—15 ibid. 6—16 ibid. 524—3 Conn. R. 289.
†1 Salk. R. 315.   ‡3 Atk. R. 248.   §1 Cowp. R. 140.

he would be individually responsible ;"⸱ and this, without first ascertaining the liability of the principal, in a previous suit.—*The State, &c. vs. Flinn, et. al.*\*

It has been, heretofore, determined by this court, that an action of debt, suggesting a *devastavit*, would lie on a judgment, *de bonis intestatis*, against an administrator, either before or after the issuance of an execution.—*Burke vs. Adkins et. ux.*† It is, therefore, no objection to the declaration, that it does not aver, that a *fi. fa.* issued, and was returned *nulla bona.*

Let this review of the authorities serve, to shew the ground, on which rests our opinion, that the declaration in the case, before us, discloses a good cause of action. And as the case must be remitted to the Circuit court, it may ⸱ be well to settle several other questions, which have been incidentally noticed at the argument, and which may arise on the trial.

At the⸱ time the bond sued on, was executed, no executor or administrator, was to be liable, out of their individual estates, for not pleading, mispleading, ⸱ or false pleading in, or to, any action whatever, which may be brought against them, as such. This law was changed, in 1826, so far as it relates to the executor or administrator; and by the repealing statute, it was enacted, that "no security for an executor or administrator, shall be chargeable, beyond the assets of the testator or intestate, on account of any omission or mistake, in pleading, of the executor or administrator." The old law changed the common law, and was more favorable to the administrator, while the act of 1826, restored the common law, and subjected him to a recovery, as for a *devastavit,* for not pleading, &c—*Garrow vs. Emanuel.*‡

It is entirely immaterial to the surety here, whether the first or the last statute, admeasures the extent of his liability ; for under neither, can he be charged, beyond the assets of the intestate.

---

\*3 Blackford R. 72.     †2 Porter R. 236.     ‡3 Stewart R. 285.

As the surety can only be liable to the amount of assets, it will be necessary for the jury, not only to find the issue for the plaintiff, but also, the extent to which the administrator has wasted the assets—*Fairfax* vs. *Fairfax :\**—*Sturdivant* vs. *Raines:*†—*Burnett* vs. *Harwell:*‡ *Gardner's adm'rs* vs. *Vidal :*§

It will follow from what we have said, that though an administrator may be charged, for a constructive waste, yet, to authorise a recovery, against his surety, an actual *devastavit* must be shewn.

It remains but to add, that the judgment must be reversed, and the cause remanded.

---

*5 Cranch R 19    †1 Leigh's R 481    ‡3 Ib. 89    §6 Rand. 160.