# McDowell, Adm'r, v. Jones, Adm'r.

*Bill in Equity for Final Settlement of Estate, and to charge Estate of Surety for Devastavits by Administrator, &c.*

1. *Non-claim, statute of; what within influence of.*—Every claim, arising from a breach of contract, is within the operation of the statute of non-claim; though where the contract involves only a contingent liability, the claim may not accrue until the happening of the contingency, and does not fall within the statute until that time.

2. *Same.*—The liability of a surety on an administration bond, for a devastavit committed in the life-time of his principal, is strictly matter of contract, and is absolute, not contingent; accruing at the time of the devastavit, and not at the time of its subsequent judicial ascertainment.

3. *Same; what will not dispense with presentation.*—Knowledge on the part of the personal representative, of the existence of a claim, no matter how full and complete, is not equivalent to presentment, and does not dispense with the necessity of a presentment to avoid the bar of the statute of non-claim.

4. *Presentment; who can not make.*—A presentment of a claim within the statute of non-claim, can only be made by a party who has an interest in the claim, and a legal or equitable right to enforce it; a presentment by an administrator whose appointment is absolutely void, will not avoid the operation of the statute.

5. *Grant of letters; when void.*—A grant of letters of administration *de bonis non* is a nullity, when the order removing the administrator in chief is void; and it confers on the person so appointed no authority to make presentment of claims due the estate.

6. *Non-claim; statute of; what will not avoid.*—A report of insolvency by an administrator founded on his knowledge of claims, or on a presentment by

one who had not authority to make it, will not avoid the bar of the statute; though on such report the estate is declared insolvent.

APPEAL from the Chancery Court of Wilcox.

Heard before Hon. CHARLES TURNER.

The original bill in this cause was filed on the 6th day of March, 1873, by the appellee, E. N. Jones, as administrator *de bonis non* with the will annexed of Charles Satterwhite, deceased, against the appellant, John R. McDowell, as administrator of the estate of D. C. Sellers, and numerous other parties.

Its main purpose was the removal of the administration of the estate of Satterwhite into the Chancery Court, and its final settlement there, and in connection therewith, the settlement of the administrations of F. S. McGuire and John W. Satterwhite, former administrators in chief, and a decree against the surviving administrator and the sureties on the administration bond for the amount found due.

It also sought to set aside certain sales of lands made by the administrators in chief during the late war, and charged various devastavits committed by them from the year 1861 up to the year 1867, alleging, among other things, that they sold in 1861 large amounts of personal property, without any necessity therefor, receiving payment in Confederate currency, which was of no value to the estate; that they took no security on the notes given for the purchase money of lands sold under order of the Probate Court, and of which they themselves purchased a large portion; that they made illegal investments in Confederate bonds, and on a partial settlement in 1867 fraudulently claimed, and were allowed credit, for Confederate money on hand, which, it was alleged, they collected from themselves after the war, alleging that they had paid the same for the purchase of the lands. Their accounts filed on this settlement, showed large investments in Confederate bonds, for which they were allowed credit. The bill also made the purchasers of the lands and the heirs and legatees, parties defendant. The case made by the bill and answer, and exhibits, so far as is material to the present controversy, is as follows:

Appellee's testator, Charles Satterwhite, died testate in Wilcox county, Alabama, in the year 1860, leaving a large estate, consisting of lands, about $60,000 in money, and much other personal property; the debts not exceeding five thousand dollars. On the 24th day of November, 1860, F. S. McGuire and John Satterwhite were appointed and qualified as administrators, with the will annexed, giving a joint administration bond, on which Sellers, appellant's intestate,

was a surety.   Under this appointment, they came into possession of Satterwhite's real and personal property.   Both administrators acted as such, after their qualification, until the death of John Satterwhite in 1867, after which, as the bill alleges, "McGuire failing to give an additional bond, as required by the Probate Court, on the 24th day of January, 1870, at an irregular term of the Probate Court of said county of Wilcox, an order was made removing him from the administration of said estate, and De F. Richards, as sheriff of said county, was appointed administrator *de bonis non* with the will annexed of said estate, and on the 25th day of April, 1870, the court stated an account against the administrator, because of his failure to file accounts and vouchers for a final settlement, within one month after its order removing him, and appointed the second Monday in June, 1870, for the hearing."   In August, 1870, McGuire made a settlement with Richards, on which a decree was rendered against said McGuire, as surviving administrator, &c., in favor of Richards as administrator, &c., for $47,336.88.   The bill further alleges, that an appeal was taken to the Supreme Court by said McGuire, and the decree of said Probate Court was reversed, and the case remanded on account of his removal at an irregular term of the Probate Court.   After said order removing said McGuire was reversed by the Supreme Court, on the 14th day of October, 1872, at a regular term of the said Probate Court, "McGuire was again removed from the administration of said estate, by order of said Probate Court, and on the 14th day of November, 1872, orator was appointed and qualified as administrator, &c., but said McGuire has never made any final settlement."

The bill further alleges that "Sellers departed this life in Wilcox county, on the ———, 18—, and John R. McDowell was duly appointed administrator by the Probate Court of Wilcox, and qualified as such, and is now administrator *de bonis non* of said estate, and within eighteen months after the death of said Sellers, a copy of the bond of said McGuire and said Satterwhite was presented to said John R. McDowell, as administrator of the estate of said D. C. Sellers, by your orator, as attorney for D. F. Richards, the administrator *de bonis non* with the will annexed, of the estate of Charles Satterwhite, deceased, to-wit, on the 8th day of October, 1870; and that afterwards a copy of said bond, on the 11th day of September, 1871, within eighteen months after the grant of letters of administration to said John R. McDowell, was filed for presentation against the estate of D. C. Sellers, in the office of the Judge of Probate for Wilcox county, and also a decree rendered August 8th, 1870, in said court,

against F. S. McGuire as surviving administrator with the will annexed of Charles Satterwhite, in favor of D. F. Richards, administrator *de bonis non* with the will annexed. In consequence of the presentation of said claim by your orator, the estate of D. C. Sellers was reported insolvent by McDowell, as administrator, and was on the 8th day of May, 1871, declared insolvent by the Probate Court, and said John R. McDowell was continued in the administration of said estate as administrator *de bonis non*, and afterwards on the 18th day of September following, a copy of said decree and bond, verified as required by law, was filed in the Probate Court for Wilcox county, against the insolvent estate of D. C. Sellers, deceased." It further appears that on the 10th day of December, 1870, the appellee, Jones, as administrator *de bonis non* filed a copy of the bond in the Probate Court, as a claim against the estate of Sellers, making oath that he believed the estate of Sellers was indebted on account thereof to the estate of Charles Satterwhite, in the sum of fifty thousand dollars.

The bill required the defendants to answer on oath, and McDowell so answered. He admitted the death of appellee's testator, and the appointment and qualification of the administrators in chief, and the giving of a joint administration bond on which Sellers was surety; that both of them acted as administrators until the death of John Satterwhite in 1867, and that McGuire continued as sole surviving administrator, and denied all knowledge of the alleged *devastavits* imputed to them. He also admitted that "the death of Sellers happened about the time stated in the bill," which does not give any date, and showed that he was duly appointed and qualified as Seller's administrator on the 13th day of December, 1869. He insisted that McGuire continued as sole surviving administrator after the death of John Satterwhite until the legal removal of McGuire by the Probate Court on the 14th day of October, 1874; that the previous orders removing McGuire and appointing De F. Richards administrator *de bonis non* of Charles Satterwhite's estate were mere nullities; that thereby Richards never became such administrator, and never was authorized to present claims in its favor. He denied that Sellers' estate was ever bound to Richards, as administrator or otherwise. He, in effect, admits presentation by Richards as charged in the bill, but alleges that such presentation and filing were made by Richard's claiming to be administrator *de bonis non*, &c., when he never was such administrator, and while McGuire was in truth such administrator. He admitted that the estate of Sellers had been declared insolvent, though, as he

stated, not bound for any debts due by him on his own account, and averred that it would be entirely consumed, if held liable for the claim preferred by the bill. He filed objections to the claims when presented in the Probate Court. He now pleads the statute of non-claim, and also that the claim properly verified, had never been filed in the Probate Court, as a claim against the insolvent estate, within the time prescribed by law.

The cause was submitted, as the chancellor's decree recites, on "pleadings and proof." He made a decree assuming jurisdiction of the administration of Satterwhite's estate, and ordered a reference to state the accounts, &c. Afterwards, in a decree confirming the register's report, the chancellor found that the claim against Seller's estate, upon the bond of McGuire and Satterwhite, had been duly presented against the estate of Sellers, and thereupon rendered a decree in favor of appellee against appellant McDowell, as administrator *de bonis non* of Sellers, and others, for $62,071.55, the amount found due, which was ordered to be certified in the Probate Court. The final decree also granted relief against other parties, on matters which need not be here noticed.

McDowell alone appealed, and without any objection being raised on that account, the appellee joined in the assignment of error.

The rendition of any decree against McDowell, and the finding that the claim had been duly presented against Seller's estate, are now assigned as error; and also certain other proceedings in the cause, which need not be noticed further.

PETTUS, DAWSON & TILLMAN, and COCHRAN & DAWSON, for appellant.—Construing the averments of the bill with the answer, it seems clear that Richards was never administrator. It appears from the bill that McGuire was removed at an "irregular term," and afterwards a settlement was had between Richards and McGuire, whom the Probate Court had attempted to remove, and a decree was rendered in Richards' favor as administrator *de bonis non*. On appeal from this decree, the bill states that it was reversed, on account of the removal of McGuire at the "irregular term." That order of removal was thus assailed on collateral attack, and yet the court held it void; and in reversing the decree as it did, necessarily decided that Richards was not administrator and could not bring McGuire to account. It was thus shown that McGuire had never been removed, and consequently Richards had never been appointed, and McGuire

[McDowell, Adm'r, v. Jones, Adm'r.]

was administrator when the alleged presentment was made.—
*Boynton v. Nelson*, 46 Ala.; *Matthews v. Douthitt*, 27 Ala.

2. Richards, never being administrator, had no interest
in or claim against the estate. He was a mere stranger, and
his presentment could not amount to more than the giving
of information to the administrator, by any other stranger.
Such knowledge, "no matter how full and complete," could
not amount to a presentment.—*Jones v. Lightfoot*, 10 Ala. 17;
12 Ala. 193; 10 Ala. 992. Nothing short of a presentment
by one having an interest, will avoid the statute of non-
claim. The presentment is in the nature of a suit, to which
there must be parties having an interest.

3. Whether the defaults of the principal, for which the
surety's estate was sought to be held liable, were judicially
ascertained or not, the statute of *non claim* operates a bar to
relief.—*Fretwell v. McLemore*, 52 Ala. 124. The appellee
can not adopt Richards' acts, and by "ratification," after the
bar has become complete, revive the claim. To allow this
would be to allow him to defeat rights vested in others.—
*Cook v. Tullis*, 18 Wallace, 332; *Wood v. McCain*, 7 Ala. 800;
*Dearing v. Lightfoot*, 16 Ala. 28. To enable Jones to ratify,
he must either have been able to do the act at the time it
was attempted, or at the time he ratifies. Jones was not
administrator when the presentment was attempted; he
could not make a valid presentment after his appointment,
the claim being then barred. Hence he could not ratify.—
10 Wallace, 676; 18 Wallace, 332.

4. The proceedings for the removal of McGuire and the
subsequent proceedings had therein, were in no sense a suit
on this claim, against Sellers or his estate. Neither he nor
his administrator was a party; and of course they can not
dispense with the necessity for a filing or proper present-
ment.

JONES & JONES, S. J. CUMMING & R. GAILLARD, for ap-
pellee.—Richards was an administrator *de facto* if not *de
jure.*—*Hooper v. Scarborough*, 49 Ala. 137. In presenting the
claim, he was confessedly not acting for himself; he was act-
ing for those having beneficial interests in the claim. He
was but a trustee for them. This was the legal effect of his
acts. The doctrine of principal and agent does not apply,
strictly speaking, to the case. "An act professedly done for
another person, though without any precedent authority
from him, becomes his act, if subsequently ratified by
him."—Smith's Manual of Common Law, and authorities
there cited.

2. The claim was properly presented, if filed against the

estate of Sellers within nine months after it "*accrued*." This claim did not accrue, until the decree of final settlement in this cause.—15 Ala. 221; 24 Ala. 417. There was no judicial ascertainment of any liability on the bond, until the decree in this cause.—*Gilbreath v. Manning*, 24 Ala. 418; *Thompson v. Searcy*, 6 Port. 393; *Dean v. Portis*, 11 Ala. 104; *Kyle v. Mays*, 22 Ala. 673.

3. A claim on which a suit is pending is not required to be filed.—*Ervin v. McGuire*, 44 Ala. 506; *Dolberry v. Trice*, 49 Ala. 207. We insist from the time of McGuire's removal, and his being cited to make a settlement in 1870, a suit was pending about this very claim, which continued until the filing of this bill. Although in a strict technical sense Sellers was not a party to the suit, the result of it would be a decree on which, after return of no property, execution could issue against him.

4. If Richards was neither a *de facto* or *de jure* administrator, he certainly acted for some one. He had no personal interest in the matter. He acted for those whom he believed he was authorized to act for. The *claim* was certainly presented. If the legatees and succeeding administrator found no fault with his act—if they looked upon it as an act done in their interest, and assented to it, what concern is it to McDowell about the technical relation, from a legal standpoint, which Richards bore to them? The election to affirm or disaffirm that act was vested in those beneficially interested in Satterwhite's estate, and not in McDowell. Besides this, the claim having been presented, if defective before, was cured when Jones filed his affidavit to its correctness. This would make it good under the rule declared in *Ervin v. McGuire*, 44 Ala.

BRICKELL, C. J.—The demand preferred by the bill against the intestate of the appellant, is founded exclusively on his suretyship on the bond of the administrators with the will annexed of Charles Satterwhite, deceased. Independent of that bond, and the breaches of its condition, by the *devastavit* imputed to the principals, there is no equity averred to charge the intestate of the appellant. The claim is then matter of contract strictly, and the liability of the intestate to answer to it, is absolute, not contingent.—*Pratt v. Northam*, 5 Mason, 95. There is no claim arising from a breach of contract, not within the operation of the statute of *non-claim*. There may be contracts, involving only contingent liability, or dependent upon the future performance, or the happening of some particular event, of some act or duty, by the person to whom the promise is made, or by some

other person, not falling within the operation of the statute. Or, there may be claims not within its operation, because they do not accrue, until the doing of some act by another, after the grant of administration. When the act is done, and the claim has accrued, the bar of the statute is computed, not from the grant of administration, but from the doing of the act, and the accrual of the claim. The familiar illustration, is, the payment by a surety of the debt of the principal. The claim of the surety for reimbursement arises only on making payment, and from that time his claim falls under the bar of the statute.—*Neil v. Cunningham*, 2 Port. 171; *McBroom v. Governor*, 6 Port. 32; *Winter & Gayle v. Br. Bank Mobile*, 23 Ala. 762. Of the former class, *contingent claims*, is the liability of an endorser of a negotiable promissory note. The contract of indorsement, in its nature and terms, is *conditional and contingent*, imposing no liability, and no right to demand from the indorser, until the indorsee at maturity makes demand of the maker, and he fails to pay, of which due notice shall be given the indorser.—*Cockrell v. Hobson*, 16 Ala. 349. Or, as in the case of *Pinkston v. Huie*, 9 Ala. 252, which was strictly a contingent demand, dependent on future events that might never happen. The liability of a surety on an administration bond, is contingent, until the principal shall fail in the performance of a duty required of him by law. But whenever there is a failure, it is absolute, and he is bound to answer to those having the ultimate interests in the assets, for whatever injury they may sustain from the breach of the condition of the bond. The modes of enforcing the liability may vary, as the remedy pursued may be in law or in equity. This does not change the character of the liability; that is fixed by, and is determined from the nature and terms of the bond, and not by the remedies which may be pursued for its enforcement. In *Jones v. Lightfoot*, 10 Ala. 17, it was held that a monied demand, dependent for its existence on the reformation by a court of equity, of a written contract, was within the operation of the statute; that it could not be be regarded as accruing only on the rendition of the decree correcting the mistake, though such decree was necessary to give a right of action for the demand. The court say: "A contingency, excepted from the operation of the statute, cannot depend upon the action of the court in granting or refusing relief. If the party is not entitled to a judgment, or decree, at the hands of the court, he has no claim against the estate, and there is an end of the controversy. If he is, it cannot be considered as contingent, whether it will be granted or refused. In this case, upon establishing the fact of mistake in the deed, and

the injury consequent thereon, the redress was as certain as upon an instrument in writing for the payment of money. Whether a claim exists or not, does not depend upon the proof by which it is established, or the forms in which relief must be sought, and indeed, the argument, if allowed, would go the entire length of repealing the statute."

The *devastavit* the bill imputes to the principal was committed in the life of the surety. The right of action of the legatees, whose representative for the purposes of this suit, the appellee is, was complete before the death of the surety. The Court of Probate, on their application, could have compelled a final settlement of the administration, and the distribution of the assets. Or, a court of equity would have entertained a bill for a settlement of the administration and distribution, against the administrators and their sureties, rendering decrees against them jointly, for the defaults of the principals.—*Moore v. Armstrong*, 9 Port. 697. If the remedy had been pursued in the Court of Probate, during the life of the surety, the decrees rendered against the principals would have been conclusive on him, and the foundation for immediate suits at law on the bond, against principals and sureties. Or, executions could have issued against the principals, out of the Court of Probate, and on a return of *no property found*, then execution could have issued against principals and surety. The liability of the surety accrued as a claim, by the *devastavit*. It was not dependent on a future contingency, or on a condition, or event which might never happen. It was not the subject of a suit at law, nor was there any right of action at law against the surety, until the *devastavit* had been established by a judgment or decree against the administrators. A claim may fall within the operation of the statute of *non-claim*, though the right of action thereon has not accrued. It is enough, that the claim, the right to demand in the future, certainly exists.— *King & Barnes v. Mosely*, 5 Ala. 610; *Jones v. Lightfoot*, *supra*. Otherwise, bonds, promissory notes, or other contracts for the payment of money at a future day, would be excluded from the operation of the statute, until their maturity. If there was any uncertainty, it was the uncertainty of establishing the *devastavit*, so as to bind the surety. Such uncertainty is not the contingency which relieves a claim from the operation of the statute. In *Fretwell v. McLemore*, 52 Ala. 124, after patient and deliberate consideration, we held, the claim against the estate of a deceased surety of an administrator, to recover for the *devastavit* of the administrator, committed in the life of the surety, was within the operation of the statute of non-claim. This decision has

(3)

been followed since, in *Owen's Adm'r v. Corbitt, Adm'r*, and *Foster v. Holland's Adm'r*, MSS. These decisions are therefore conclusive, that the demand preferred by the bill falls within the operation of the statute; and they are sustained by the decision of Judge STORY, in *Pratt v. Northam*, *supra*, construing a similar statute of Rhode Island; and by the decision of the Supreme Court of Tennessee, on a similar statute, in *Hooper v. Bryant*, 3 Yerg. 1.

It would not be doubted, that if judgment or decree had been obtained against the administrators, so that the right of action at law on the bond, against them and the sureties would be complete, the claim against the surety would fall within the operation of the statute. Yet such judgment or decree would not enlarge, or in anywise affect the liability of principal or surety. That liability accrued from the unfaithful administration, the breach of the condition of the bond. The judgment or decree simply establishes the right of the plaintiff to sue at law on the bond; no other than parties who have reduced their demands to judgment or decree having the right to such suit. But as is said in *Thompson v. Searcy*, 6 Port. 393, it is not the foundation of the action, and is recited in the declaration, or complaint, only as fact, the existence of which is indispensable to the plaintiff's right of recovery.

The bill proceeds on the supposition, that the claim is within the statute, and consequently avers a presentment was made within eighteen months after the grant of letters testamentary, by the presentment of a copy of the administration bond to the appellant. Such presentment is averred to have been made by De Forest Richards, as administrator *de bonis non*, with the will annexed of the testator, through the appellee as his attorney. The presentment is substantially admitted by the answer, though it is denied that Richards was the administrator *de bonis non* of the testator, or that he had any interest in the estate, legal or equitable, or any right or authority to make the presentment, so as to intercept the operation of the statute of *non-claim*. It cannot be doubted that the appellant, by this presentment, was fully informed of the existence of the claim; but the uniform construction of the statute has been, that knowledge of the existence of the claim on the part of the personal representative, no matter how full and complete, will not avoid the bar of the statute, and dispense with the presentment it requires, either in equity or at law.—*Jones v. Lightfoot*, *supra*; *Bogg's Adm'r v. Br. Bank Mobile*, 10 Ala. 970; *Pipkin v. Hewlett*, 17 Ala. 291. Such knowledge may, in all cases, be imparted by, or acquired from, mere strangers, who

are without authority over, or right in, or connection with the claim. To avoid the operation of the statute, it is required there shall be an act done by the creditor or claimant —a presentment of the claim; and it is this act only, which satisfies the words or purposes of the statute.—*Br. Bank Decatur v. Hawkins*, 12 Ala. 755. The presentment must not only furnish the personal representative, knowledge of the existence of the claim, but also knowledge that those having the right and interest, rely on, and intend to enforce it. The knowledge of the existence of the claim may be derived from a stranger, but the further fact of the intent of those in interest to rely on and enforce it, can be derived from them alone, or from their agents.—*Jones v. Lightfoot, supra.* It is the knowledge of this last fact, derived from the presentment, the statute authorizes and requires, that furnishes the personal representative with just and legal grounds for resisting applications made for the payment of legacies, or for distribution, after the expiration of eighteen months from the grant of administration; or, if legacies may be paid, or partial distribution may be made, of the necessity of deferring final settlement, and the amount of assets he should retain to await the establishment of such claim. It is a necessity, therefore, the presentment should be made by a party having an interest in the claim, and a right, legal or equitable, to its enforcement.—*Hallett & Walker v. Br. Bank Mobile*, 12 Ala. 193; *Cook v. Davis, ib.* 551.

The only connection Richards had with the claim was in the capacity of administrator *de bonis non*, under the appointment made by the Court of Probate, on the 2d Monday in August, 1870. If that appointment was valid the presentment of the claim could have been made by him, as it could also have been made by any of the legatees entitled to distribution. We are, however, constrained to declare that appointment void—a mere nullity; and that the presentment made by Richards was the act of a stranger, which may have given to the appellant notice of the existence of the claim, but did not, and could not, inform him of the further indispensable element of a presentment, *that the estate of the intestate was looked to for payment.*

It is not now matter of controversy in this court that there cannot, within the same jurisdiction, be two valid grants of administration on the same estate, existing at the same time—one or the other must be void.—*Matthews v. Douthitt*, 29 Ala. 373; *Coltart v. Allen*, 40 Ala. 155; *Nelson v. Boynton*, 54 Ala. The case as it is presented by the pleadings, and the transcript, from the Court of Probate, exhibited with the

bill, does not leave the validity of the order removing Mc-
Guire from the administration in chief an open question.
The bill alleges its invalidity, and further discloses that when
its validity was directly presented to this court, on an ap-
peal from a decree rendered against McGuire as a removed
administrator, in favor of Richards as administrator *de bonis
non*, it was declared void. That order being void, the grant
of administration *de bonis non* to Richards was of necessity
void. The administration in chief not being vacant, there
was no room for an administration *de bonis non*.

The presentment subsequent to that made by Richards,
was after the expiration of eighteen months from the grant
of administration, and cannot revive the claim the statute
has barred. Nor do we think it material that the appellant,
because of his knowledge of the existence of the claim, re-
ported the estate of his intestate insolvent. A personal rep-
resentative may report an estate insolvent whenever he is
satisfied the assets are insufficient for the payment of debts.
When he makes such report, he files a full statement, not of
the claims which may have been presented to him, but of
such as *have come to his knowledge.*—R. C. §§ 2178–9. If such
claims are not presented within eighteen months after the
grant of administration, it is a valid objection to their allow-
ance as claims, entitled to share in the distribution of the
assets. Though if filed within nine months after the decree
of insolvency, in the Court of Probate, and before the expi-
ration of eighteen months, such filing would operate as a
presentment.—*Lattimore v. Williams*, 8 Ala. 428. The re-
port of insolvency does not indicate more than that the ap-
pellant had knowledge of the existence of the claim—it does
not indicate there had been a presentment of it. In *Jones v.
Lightfoot, supra*, the testator had set apart a sum of money
for the payment of the claim, and the executors had deferred
the settlement of the estate, awaiting the issue of a suit in-
volving it, and had employed counsel to defend the suit.
These were facts indicating only the knowledge of the execu-
tors, that the claim existed. Yielding to the words and
spirit, and purposes of the statute, we are constrained to
declare the chancellor erred in overruling the appellant's
plea of the statute of *non-claim.* As the case is now pre-
sented, it is a positive bar to the relief sought against him.

The appeal has been taken and prosecuted by the appel-
lant alone, without joining his co-defendants in the Court of
Chancery, and he alone has assigned errors in this court.
The appellees, without objection to the mode of taking and
prosecuting the appeal, have joined in the assignment of
errors. The conclusion we have reached renders it neces-

sary that the decree as against the appellant, should be reversed, and the bill as to him dismissed. In no other respect and as to no other party, is it disturbed.

. NOTE BY REPORTER.—After the delivery of the opinion, the appellee petitioned for a rehearing, and in event that was denied, for a modification of the decree dismissing the bill as to appellant, so as to make it one of reversal merely, and to remand the cause, that appellee might make certain amendments, which would show that Richards acted not merely as administrator, but also as agent of some of the heirs and legatees of Satterwhite. Accompanying the petition were three affidavits tending to establish these facts. The appellant filed counter affidavits, denying these facts. The following response was made thereto:

*Per Curiam:*—The application for a modification of the judgment rendered in this cause on a former day of the term, so that the cause may be remanded, and the opportunity afforded for an amendment of the pleadings, and the introduction of further evidence, must be overruled on the authority of *Johnson v. Glasscock*, 2 Ala. 249; *Maury v. Mason*, 8 Port. 211; *Rumbley v. Stanton*, 24 Ala. 712.