SAMUEL H. GARROW *vs.* CARPENTER & HANRICK, ADM'RS.
OF B. H. HALL.

*Error from the Circuit Court of Mobile County*—Before the
Hon. P. T. HARRIS.

———◆———

A parol agreement, made contemporaneously with a written one, although
the former should depend upon the latter, and relate to the same sub-
ject, may nevertheless be established by parol proof, and maintained,
if it can be so separated from the written contract, as that it will not ap-
pear to have been intended to form a constituent part of it, and if it
does not go to alter, contradict, or explain such written contract.

The answer of a defendant in chancery, formally denying that which he
is not alleged to know, and which, from his situation, he could not
know with any certainty, is not so conclusive as to require more than
one witness, on the part of the complainant, to establish what is thus
denied.

A defendant is not bound to plead that which is strictly a set off; but may
if he choose, resort to his own action.

The revival of a suit against administrators, which had been commenced
against the intestate, and the prosecution of the same, until it is abated
by the production of an order of court, on the part of the defendant,
showing the insolvency of the estate, is sufficient to take the demand
out of the statute of non-claim.

B. H. Hall, on the 1st of March, 1821, entered into a writ-
ten agreement with Dameron and Williams, whereby they
were to build him certain stores in the city of Mobile.   Sam-
uel H. Garrow (the complainant in error) became their secu-
rity for the performance of the work by a certain time.—
When but a small portion of the work was performed, Dam-
eron and Williams failed in business ; and Garrow, the secu-
rity, finished the work ; but not by the time it was to have
been finished.   Hall brought suit against Garrow on the ar-

ticles of agreement, for the failure of his principals and himself to complete the stores in due time. The suit, by an order of reference, came before arbitrators, who awarded to Hall one thousand and seven dollars damages, and their award was made the judgment of the court. Garrow, who had obtained an assignment of the articles, sued Hall for the money which he, Hall, was to pay for the building of the stores. In the progress of this suit Hall died; and the action was revived against Carpenter and Hanrick, his administrators, who are now defendants in error. The judgment against Garrow was also revived; and both the suit and judgment were referred to arbitrators; but before they had reported, the administrators produced an order of the County Court declaring the estate of their intestate insolvent. Upon this, the suit against the administrators abated, the judgment against Garrow remaining in full force. Garrow then filed his bill to enjoin the judgment. In this bill he charges that, at the time he became security for Dameron and Williams, and before he would sign the same, it was agreed between the parties that, in case the said Dameron and Williams should be unable to build and finish said stores, according to the agreement, Garrow should be allowed to complete the same; and said Hall should pay him the sum he was to pay Dameron and Williams for the work, namely, three thousand eight hundred and fifty dollars, after deducting therefrom such damages as Hall might have sustained by any delay in the time of finishing the work. The bill charges, that Hall refused to pay him for the work according to the agreement, alleging that Dameron and Williams were indebted to him, Hall, at the time of entering into the articles of agreement, to a much larger amount than the work came to. The bill also alleges, that the complainant endeavored to bring his claim before the arbitrators who made the award against him, but they refused to consider it, and said, that their only business was to assess the damages which Hall had sustained in the delay of

completing the buildings. On the filing of this bill, the judg-
ment, at law, against Garrow, was enjoined.

The answer of Carpenter and Hanrick, administrators of
Hall, denies the parol agreement ; relies on the indebtedness
of Dameron and Williams (under the name of J. Williams
& Co.) at the time of making the contract ; and alleges that
Garrow knew of that indebtedness. The answer also insists
on the conclusiveness of the award ; and relies on the sta-
tute of non-claim. The parol agreement is established by
one witness. It is not deemed necessary to notice the rest
of the proof in this place. By a decree of the court below,
the injunction was dissolved, and the complainant's bill dis-
missed. To obtain a reversal of this decree, the cause has
been brought into this court.

GARROW, for Plaintiff in error.

The defendants in their answer to the complainant's bill,
deny the verbal agreement set up by the complainant : but
this is not to have the force usually allowed to the denial of
an answer in chancery, because they are administrators, and
are therefore not presumed to be conusant of the facts sta-
ted in the bill—9 *Cranch*, 160. The same principle has been
recognised in this court. But whatever weight is given to
the answer, the verbal agreement is established by two wit-
nesses.

The ground taken in the decree is, that a parol contract
cannot be set up at variance with a written instrument. The
general principle is admitted. But this is not a verbal agree-
ment modifying the contract : it is a distinct collateral agree-
ment, and not within the rule. The parol agreement here
does not vary the one in writing. Dameron and Williams
are bound by the written agreement to complete the build-
ings within a certain time, and Garrow is bound with them as
security. But the parol agreement is made in consideration
of the possibility of a failure on the part of Dameron and

46

Williams to complete the work.   In that event Garrow was to be permitted to complete the work, and to receive the pay for it.   This is neither contradicting nor varying the meaning of the instrument ; and that such a parol agreement may be established by proof, its being made at the same time with the written one, being no objection, see *Chitty on Contracts*, 26—3 *Starkie*, 1007, 1043, 1047—12 *East*, 578—1 *Peters'*, 89—1 *Peer Williams*, 113—14 *Johns.* 210.   Garrow, in regard to this parol agreement, stands in the situation of any other man.   The parties indeed, are not the same.   The written contract is between Hall of the one part, and Dameron and Williams and Garrow of the other part ; and the parol contract is between Hall and Garrow.   The parol agreement could not have been incorporated into the written one, without making it a very awkward instrument.

Independent of the parol agreement, Garrow is entitled to pay for his services.   He went on with the work by the consent of Hall.   Will it be said that in this, he was only doing as he was bound to do by the written contract ?   Not so. Dameron and Williams had failed.   For this failure Garrow would have been liable, yet not to the extent of the value of the building, but only to the amount of damages sustained by Hall from the disappointment.   Suppose Hall to have made as advantageous a contract with another ; in that case, the damages would be only nominal.

But it is contended that Dameron and Williams were in debt to Hall, and that Hall had a right to pay for the building in these debts.   This would have been a fraud on the security, Garrow ; if such had been the understanding, it ought to have been set out in the written agreement.   The contract says that Hall *shall pay*, and not that he shall accept the work in payment of debts due from Dameron and Williams to him.   There is no sufficient evidence of these debts ; and if there were, there is no evidence that Garrow knew of their existence ; but the contrary is proved by Garrow, as far as a negative can be established by proof.

The suit against Dameron and Williams was settled by arbitration ; but it was proved that the arbitrators refused to take any other matter into consideration but the damages which Hall had sustained by not having the building completed in time. This was in fact, the subject which was brought properly before them by the written agreement. But we have a right to show that they did not take into consideration in that trial, that equitable set off which we now claim—See 9 *Mass. R.* 320—5 *Mass. R.* 334—'7—'8—*Caldwell on Arbitration*, 119, 126, 129, 136, 149, 211, 212.

Courts of equity are careful in case of sureties not to extend a contract, so as to operate against them, beyond its express terms—9 *Wheaton*, 703.

That part of the answer which is not responsive to the bill, by a well known principle, is not evidence ; nor can it avail any thing without being proved.

The complainant also cited 1 *Term R.* 691, and 1 *Espinassie's N. P.* 185.

GOLDTHWAITE, *contra.*

The question is, Was the parol agreement here attempted to be set up, a distinct contract, or a modification of the contract which was committed to writing ? I contend that it appears from the language of the bill, that Garrow himself considers it a modification of the written agreement ; and that its being a distinct collateral agreement is an after-thought. The complainant charges, that before he would sign the contract, it was understood between the parties, that if Dameron and Williams should fail to do the work, that Garrow should have the liberty of doing it, and that he should receive the pay. Was there any mutuality in such an agreement as this ? While it extends a privilege to Garrow, it is clear that Hall could have no remedy but on the written agreement : and this being so, is it not obvious it varies the agreement and makes it less favorable to Hall.

But I contend that, no matter what was the understanding before signing the agreement, every thing was merged in the writing—1 *Johns. Ch. R.* 273.

If this was an independant contract, it is singular that it is not so set out in the bill. When Garrow sues Hall why does he not resort to the verbal contract ? No : Not regarding it as an independant contract, he takes an assignment on the writing. Does the verbal agrenment amount to any thing independent of the writing ? Suppose Hall had wished to set aside the contract with Dameron and Williams, and resort to the verbal contract, could he have had any claim upon Garrow? Certainly not. Then the total want of mutuality in this agreement, if we take it separately, proves that it could have been only a modification of the agreement in writing. It cannot therefore, be established by parol.—8 *Wheaton*, 174. A written instrument cannot be varied by conversation anterior to the signing of it. Parol proof cannot be permitted to alter or explain it.—11 *Johns.* 201—3 *Johns.* 68. The principle is well established. It does not depend on the statute of frauds. It is a principle as old as the law itself, that where there is a writing, that shall be the contract. The case in 12 *Johnson,* 488, has a striking application to the one before us. There it is laid down, that where a contract in writing provides that payment is to be made to one person, it cannot be explained by parol proof, so as to make the money payable to another.

This bill is deficient in equity. It presents a singular securityship, in the case of Garrow, by which the contract of Hall is made worse than if it had been made with Dameron and Williams without any security. If Dameron and Williams had performed the work which was done by Garrow, they could not have recovered payment from Hall until their own debts were paid ; but here, by Garrow's securityship, Hall is required to make double payment. The damages recovered of Dameron and Williams, by Hall, for their failure to complete the buildings according to contract, would, if

there were no security, be a joint fund out of which all the creditors of the estate of Hall would be entitled to their respective proportions; but Garrow in virtue of his being security, claims it all to satisfy his own demand. This is a strange surety, who by fixing his name to the instrument renders the contract worse, in respect to the man for whose benefit it is taken.

But if Garrow has any just claim which the laws will recognize under the parol agreement, had he not a right to have it allowed him in the other suit between the parties? and if the arbitrators had refused to allow it, could he not have applied to the court, and had the award set aside for that reason? If a party omits or declines to make a full defence before arbitrators, he cannot afterwards come into a court of equity to make out his case.—4 *Johns. R.* 510. Had not Garrow a complete defence at law? According to the complainant's own showing, the amount he is entitled to under the parol agreement is a sum wholly unascertained; it ought therefore to have been fixed by a court of law.

And if this parol contract be a distinct and independent one as it is represented, was not Garrow bound to present it to the administrators of Hall, within the eighteen months allowed by law; and not having done so, is it not barred by the statute of non-claim. It may be said that suit was brought; but it appears that the suit was brought on the articles of agreement: this was no presentation of the agreement on which the complainant now relies. A claim for unliquidated damages must be reduced to writing, and presented within the proper time, or it will be barred.—2 *Stewart*, 455.

The case cited from 12 *East*, has no application to the case before the court. A new verbal contract may waive or release a stipulation in writing: this is altogether different from modifying the meaning and changing the character of a written contract by a verbal one made at the same time.

As to the damages sustained by Hall, being only nominal, on account of the failure of Dameron and Williams to per-

form their contract; that might have been the case, if the contract had been rescinded immediately after it was made, and Hall had been able to make an equally advantageous contract with another; but the contract could only be rescinded by mutual consent. Hall had a right to hold on to his contract until the expiration of the time in which it was to be complied with.

If, however, the court should not sustain me in the positions I have taken, they will at least lay this equitable restriction upon the claim of the complainant : they will only permit him to recover a ratable proportion of his debt out of the estate of Hall. They will not, because he was the security of Dameron and Williams in a contract to Hall, which they failed to perform, permit him to recover his full debt out of the estate of Hall, while other creditors can only have their ratable proportion.

STEWART, in reply.

I ask the court to keep in mind that Garrow was a security—a character favored in a court of equity.—9 *Wheaton,* 703. We insist that Hall *was to pay* for the erection of these buildings; while it is contended on the other hand, that he was to pay nothing—that he was only to give credit to Dameron and Williams on various debts which they owed him.—The writing says he shall pay; and it must be construed strictly in favor of the security. Hall says that Dameron and Williams owed him, and that this was the main inducement with him for entering into the contract. If so, why was it not so stated in the writing ? Had this been done, Garrow would not have gone security. If this were the object, and that object kept out of view in the writing, it was a fraud upon Garrow. The payment is to be made to Dameron and Williams or assigns. This word ' assigns,' is at war with the construction of payment by discount. There is no proof establishing the fact that Garrow knew the indebtedness of Dame-

ron and Williams to Hall; and Garrow denies having any such knowledge.

As to the parol contract: it is not strictly between the same parties with the written one. It is a contract besween Hall and Garrow, which is to operate conditionally, and not absolutely. By the written contract Garrow would be bound, on the failure of his principal, only to answer in damages: but by the parol agreement Garrow is to do the specific thing, to erect the buildings. This is a consideration from Garrow to Hall. Where a collateral contract is not inconsistent with the written instrument, it may be proved by parol. The principle applies to this case. The full force of the written contract is allowed. The arbitrators have assessed the damages for the breach of that contract; and we are willing to pay them, but we also claim our rights under the other contract. The question here is not what the written contract is; if it were so, parol proof could be allowed to settle it; but a collateral agreement made previous to the signing of a written one, affecting the rights of the parties, but not inconsistent with the written agreement, is good.—14 *Vesey*, 519.— And such is this case. See also, *Cox's Ch. Cases*, 404.

If there had been no such contract, Hall would still have been bound to pay Garrow, because the work was performed with his assent. If our claim be taken as a defence against Hall's judgment for damages, the defence is good in equity.

In regard to the objection taken to testimony, such objection cannot be made here, unless made in the court below: this is an appellate court.

A strange argument has been used on the part of the plaintiff in error, going to show that, according to our view of the contract, Garrow being security, places Hall in a worse situation than if he had not been security. The counsel forgets that if Garrow had not been security, the houses would not have been builded. When that fact is recollected, the argument is answered.

But it is said that the award is conclusive and final. Admit it. But it is only conclusive as far as it goes. It is not conclusive on a matter not submitted or taken into consideration by the arbitrators. We do not dispute the award; we only say it does not embrace the claim now in litigation.

Is Garrow to be placed in a worse situation than if he had done nothing? If the houses had never been builded by Dameron and Williams or Garrow, and Hall had employed another, the damages would have been nominal, or to the amount of the difference in the two contracts: Garrow would not have been bound to pay the debts of Dameron and Williams. as it is now contended he must do. Besides, if Hall had intended to hold us responsible for the debts of J. Williams & Co. or Dameron and Williams, he should have assigned us the notes, or used due diligence by suit to collect them. He has not done so; and it is now too late to make any thing from those debts: he is, therefore, guilty of *laches*, and cannot remunerate himself by proceeding against Garrow, who was security.

In regard to the statute of non-claim, as these were mutual, subsisting debts, our claim did not need to be presented. It would, without such presentation, stand as a set off against Hall's judgment against us. And if it were a claim that ought to have been presented, more fully than it was, still, a claim not asserted within eighteen months is only lost as to assets that have come to the hands of the executor or administrator. In equity, it may still be set up as to assets *in futuro*.

For the rule of law, that a security is not to answer for the liability of his principal farther than that liability is disclosed, see 1 *Payne*, 306.

By Mr. Justice THORNTON:

This cause is brought up by writ of error, to a decree of a chancellor dissolving an injunction and dismissing a bill, filed by the plaintiff in error against the defendants, who were ad-

ministrators of one Benjamin H. Hall. It appears that a written contract was executed between the said Hall, in his life time, and the firm of Dameron and Williams, undertakers and builders in the city of Mobile, and the plaintiff as their security ; by which contract it was stipulated, that the said Dameron and Williams should erect certain store houses in the said city for the said Hall, to be completed by the first of November, 1821, for which the said Hall obliged himself to pay to the said Dameron and Williams the sum of three thousand eight hundred and fifty dollars, on or before the said first of November, 1821, provided the said houses should then be ready for delivery ; and provided further, that if not finished by the said time, the payment of said sum of money should be suspended until they were completed ; and the said Hall should be compensated by the said Dameron and Williams, or their said security, the plaintiff, such reasonable damages as the said Hall might sustain by reason of the non-completion of said buildings, according to the contract. Upon this contract Hall instituted an action at law against the plaintiff, and recovered as damages accruing to him for the non-completion of the houses, the sum of one thousand and seven dollars, to enjoin which the bill of the plaintiff was filed.

The bill charges, that before the signing by him of the contract above mentioned, it was understood and agreed between the said Hall and the said Dameron and Williams and the said plaintiff, that in case the said Dameron and Williams should be unable to build and finish said stores, according to the agreement, that then, and in that case, he should complete and finish said stores himself, and the said Hall should pay unto him the said sum of three thousand eight hundred and fifty dollars, after deducting therefrom such damages as the said Hall might sustain, in case the said buildings should not be completed by the said first of November, 1821. The bill further charges, that the said Dameron and Williams failing to complete the said buildings, assigned the

47

written contract to the complainant, who proceeded at his own costs and charges to complete the same, and delivered them up to the defendants' intestate in April, 1822. That the said Hall refusing to pay him the sum agreed to be paid as aforesaid, he commenced an action at common law against him, upon the written agreement and upon the verbal contract, to which said action, after the death of Hall, the defendants were made parties; and that during its pendency, viz : at the September term, 1828, the case was referred to arbitrators, and continued on reference from term to term, until at last it was abated upon the declaration of the insolvency of the estate of their intestate by the said defendants. The answer of the defendants denies the fact of any such verbal contract made with their intestate. They allege that Dameron and Williams were greatly embarrassed, if not wholly insolvent, when the contract was made with them by their intestate, and that they were largely indebted to him, which was the main inducement to make the said contract, in order to save this debt. They admit that the plaintiff procured an assignment of the written contract from Dameron and Williams, and also, that suit was commenced on the same, which was terminated in the manner as stated in the complainant's bill. They assert that letters of administration were committed to them on the thirteenth of September, 1824, and that the claim of the plaintiff was never duly presented ; and insist as a defence, on the statute of non-claim. The proof taken is only the depositions of three witnesses, all of which were read on the trial in the court below, without any objection being made, either to the mode of taking them, or to the competency of the witnesses, and of course the case will now be considered on the testimony in the record. There is abundance of testimony that Dameron and Williams, after putting up the frames of the buildings, failed in their circumstances, and surrendered the work with the written contract to Garrow, who completed it as above stated. That the value of the work done by Dameron and Williams, before they aban-

doned it, was something like eight hundred dollars, being two hundred dollars less than the damages recovered from Garrow as their security, by the intestate. There is one positive witness who sustains the allegation, respecting the parol agreement, which is relied on by the complainant. There are some other facts proved in the cause, which have been dwelt upon in the argument, but which to my mind, furnish very little ground for presumption, either on one side or the other—such as the insolvency of Dameron and Williams, and the indebtedness to the intestate Hall. They might have furnished a motive to him, for entering into the written contract; so, on the other hand, those very circumstances, if known to Garrow, might have been powerful reasons with him, why he would not have incurred such a hazardous responsibility as his becoming security imposed, without at the same time, the counter indemnity, which the agreement he relies upon, afforded. So, Hall's declarations that he was ready to pay whenever the buildings were done, and that it was immaterial to him to whom he paid ; though they were well calculated to inspire the complainant with ardour in the prosecution of the work, may have been artfully intended for that purpose only ; and however deceptive, furnish no very strong corroboration of the statements in the bill.

Having thus stated the substance of the bill, answer, and proofs, so far as I consider necessary to a decision of the case, I will proceed to examine the questions belonging to it.

The first which presents itself is, whether the contract set up by the complainant, even if proved, can be regarded, on account of its supposed effect, to vary or contradict the written instrument, which was signed by the parties to it. The general rule is well established, that a written contract cannot be varied, contradicted, or even explained by parol evidence. But if any contemporaneous contract be made, even in some sense on the same subject matter, which can be so separated from the written one, as that it will not appear to have been

*Garrow vs. Carpenter & Hanrick.*

intended to form a constituent part of it, and does not alter, contradict, or explain it, however it may depend upon it for its very existence, I can see no good reason, why such parol contract should not be upheld. Their mere juxtaposition, is surely no fatal objection. Let us then examine these two contracts, and see if that set up by this bill must be annihilated by the force of the admitted rule. In the written contract Hall obligated himself to pay to Dameron and Williams, a certain sum of money, for certain work to be done by them, against a certain day ; and requires the plaintiff to be security for any damages which he may sustain by a delay in the completion of the work beyond that day ; he suspending payment until its completion. Now, before Garrow, the complainant, would become a party as such security to the proposed contract, thus written, he exacts of the parties, what he might well have deemed essential to his safety, the parol agreement, viz : that Dameron and Williams should allow him, in case of their failure, to comply with the proposed written contract, to proceed and execute it ; and receive the compensation which was to be paid to them ; and that Hall should promise to pay him in the event of his doing the work, the money which by the writing he had bound himself to pay to the said Dameron and Williams. Dissect this parol contract, and view it in the light in which the testimony presents it, and it is nothing more than a contract of future assignment made by Dameron and Williams to the complainant, in consideration of his incurring the liability of surety for them, which however would have been wholly illusory, unless assented to by Hall. Now, Hall or his representatives should not be permitted to defeat this counter indemnity. The rule of law thus applied, would, as it strikes my mind, make a victim of the innocent security. To sustain an agreement in parol, to assign this contract, by Dameron and Williams, made before its execution by the signature of the parties, which agreement had been induced and occasioned by the assent and concurrence of Hall, would, it seems to me, be no

more a violation of the rule, than to sustain such a one made after its execution. Yet it is conceded, that if any man induce another to take any security upon him, by a promise of payment, he cannot avoid it, even if it be forgery, much less can he defeat an honest assignment for a meritorious consideration, which he has encouraged and occasioned for his own benefit. I do not think the contract here relied upon, is within the rule.

The next question to be considered is, whether the proof sufficiently establishes this parol contract. I have already said that there is but one positive witness to sustain it ; and I have said also, that no great stress can be laid upon the circumstantial evidence adduced. The general rule which has been invoked upon this occasion, that there must be two positive witnesses, or one, and strong corroborating circumstances, I do not think applies to this case. The rule is not inexorable, but yields to such reasonable considerations as show the impropriety of its application. It is founded on the equitable principle, that evidence should be weighed, and the preponderance given not to number merely, but to the greatest weight of the testimony. The answer of a defendant, who is made a competent witness by the complainant, is equal to another competent witness ; and without more, the cause is in *equilibrio*, and the maxim applies, *melior est conditio defendentis*. It will therefore require another, or what is equivalent thereto, a powerful array of coadjuvant circumstances to turn the balance. Suppose, however, that from the situation which a defendant in chancery has occupied in relation to the matter in controversy, he is not only not alleged to know, but evidently can know nothing certainly of the matter, which he nevertheless formally denies. Is it not reasonable that the answer of such a one, should be less weighty in the balances of justice, than the positive asseverations of a disinterested witness ? I conceive so on principle, and believe the authorities will sustain the position. The case of an executor or administrator defendant, is considered as an exception

to the general rule, in 9. *Cranch* 160, and 4 *Bibb*, 358. Upon another view, proper to this case, I feel also satisfied that the rule is inapplicable. The bill is also sworn to, here, as well as the answer; it is oath against oath; and in such case, one witness is sufficient. I consider the parol contract as proved.

The question of jurisdiction was raised in argument, and deserves to be considered. I understood the objection to be founded upon the supposition that there was an ample opportunity for the complainant to have obtained the benefit of his demand as now sought, by pleading a set off to the action brought against him by the defendant's intestate, Hall; judgment on which he now seeks to render fruitless by his bill. It has been often decided that a party is not compellable to plead what is strictly a set off and not a payment, in any case. It is optional with him to do so r not. In this case a separate action was resorted to by the complainant, which the defendants admit was abated at their instance, owing to the insolvency of their intestate's estate. The only remedy which remained to the complainant was before the commissioners appointed to allow the demands against the insolvent estate: but this remedy was clearly inadequate. Immediately on the declaration of insolvency, it became essential to the interest of the complainant, that he should be allowed to set off against the judgment against him, an equal amount of the debt due from the intestate to him. This court has decided in the case of *Perrine*, and *Warren's adm'rs*, July term, 1830, that in such case a set off is allowable. Then the jurisdiction is entertained properly, as it is the only way of affording the relief to which the party is evidently entitled. The only adequate remedy is by injunction to the extent of the complainant's demand, and further relief we do not think it competent to supply: as to the balance of his demand he is remitted to such remedy as the law may afford him. The relief to the extent just intimated is clearly allowable, unless the plea of the statute of non-claim, or forfeiture for failing to present it to the administrators, within eighteen months af-

ter letters granted, which is pleaded in this case, can be maintained. Let us see how this matter of the plea stands as presented to us by the bill, answer and proofs. It is averred in the bill, as if in anticipation of the bar, that an action was brought to inforce this very demand against the intestate in his life time; that after his death the defendants were made parties thereto, and that after a consent order of reference to arbitrators, and continuances for several terms for their report, it was finally abated by the defendant's producing a certified copy of an order of the Montgomery County Court, declaring the estate of the said intestate to be insolvent.— The answer admits the institution of the suit, and that it was terminated as stated in the bill; but alleges that the claim was not *duly* presented, and insists on the statute of nonclaim. Now, if the answer does not virtually amount to an admission of the course of said cause as averred in the bill; that is, that the defendants were made parties, and consented to the reference, &c. which I am inclined to think it was intended to do; yet I consider such to be the effect of the answer by force of the principle of equity that facts which are charged in the bill, and are evidently in the knowledge of the defendant, and not denied, are to be taken as admitted.[a] So far then, as the plea questions the sufficiency of these facts, to constitute a presentment of the claim, I would not consume a moment upon it, but that a decision of this court is brought to our view, which is contended to be conclusive in support of it. The case referred to, is reported in 2 *Stew.* 447. The only view of that case which can reconcile it to my mind, is that a non-suit was taken on the writ served upon the party defendant, from which it might be inferred that the claim was abandoned; for it is said in the opinion delivered that a copy of the bond or note, or an abstract will suffice; and if a copy of the writ is not a compliance with the statute, at least the declaration will supply it. Not to overrule that case, I feel bound to limit it at all events to this principle—that a writ served on an executor or administrator

on which a non-suit is taken, before a declaration is filed, will not constitute notice within the statute ; and I think this is doing great homage to the maxim, *stare decisis*. There is then an averment in the bill, which taken in connection with the admissions in the answer, amounts to what constitutes a due presentation of the demand, so far as its *manner* is con- cerned : and if the plea is understood to question its validity for want of its being made within the *time* required by the act, then there is no evidence in the cause by which it is made to appear, that the forfeiture had been incurred by the lapse of eighteen months, prior to such presentment or notice. The letters of administration are not produced, nor the time of their issuance established by any proof in the case. Now, whose duty was it to prove this fact ? If it be a fact neces- sary only to maintain the plea, by the rules of pleading ap- plicable to the case, I think it is thrown upon the defendant. In general, a party claiming a forfeiture, is bound to make out his case precisely ; nor is it a necessary exception that it involves the proof of a negative allegation.[a]

From the best consideration which we have been able to give the cause, our conclusion is, that the decree below is er- roneous, and should therefore be reversed—that a decree be entered restoring and perpetuating the injunction, and that complainant recover his costs, &c.