## JONES' EXECUTORS v. LIGHTFOOT.

1. When a vendee of land, who purchased with warranty, has been evicted, and files his bill against the warrantor, alledging a mistake in the descrip-

3

tion of the lands in the original conveyance, by which the portion from which he had been evicted, was omitted out of the deed, he can only recover the difference between the price he paid, and the sum for which he purchased in the title to the land from which he had been evicted, no notice having been given to the warrantor of the pendency of the ejectment suit, or opportunity afforded him to procure the outstanding title.

2. An actual presentment of a claim against the estate of a deceased person, or something equivalent thereto, is necessary to prevent the operation of the statute of non-claim. Knowledge of the existence of the claim, on the part of the executor, or administrator, no matter how full, and complete, will not dispense with such presentation, and the rule is the same in chancery as at law.

3. Where a right of action depends on a contingency, the statute does not begin to run until the contingency happens. But a demand depending on the rectification of a mistake, by a court of chancery, is not a contingent demand, which will prevent the operation of the statute.

Error to the Chancery Court of Greene.

THIS bill was filed by the defendant in error, against Gabriel Jones, and charges, that Jones sold to one Matthew Talbot, certain parcels of land, describing them, at $15 per acre, amounting in all to the sum of $16,445, and conveyed the same to him with warranty, he executing his notes for the purchase money. That the purchase was made by Talbot, for complainant, who was to pay the purchase money, and upon the payment to receive a conveyance from Talbot. That in the conveyance made by Jones, to Talbot, a mistake occurred, by inserting some and omitting other parcels, which are particularly described; the omitted parcels being then in the possession of Jones, intended to be sold and conveyed, and possession thereof delivered by him to Talbot, and that the omitted parcels are necessary to the full and complete enjoyment of the residue. That the parcels improperly inserted were then, and still are, in the adverse possession, and enjoyment of other persons. That Talbot, pursuant to the agreement, conveyed the land, to complainant, and by mistake committed the same error which had been committed by Jones; and that before the mistake was discovered, the purchase money was all paid to Jones.

That on the 20th August, 1838, an action of ejectment was brought by Lewis' heirs, to recover certain parcels of the

land so conveyed, and recovered the same, and ejected complainant by title paramount to Jones.

The prayer of the bill is, that Jones be compelled to rectify the mistake, by a conveyance of the lands actually purchased, or indemnify him by paying the amount in money, &c.

Jones answered the bill, and admitted all the material facts in relation to the sale to Talbot, the payment of the money, &c., but denied that he knew Talbot was purchasing for complainant. That he conveyed the land as he had purchased it from others, the conveyance being prepared by Talbot. That he had no notice of the pendency of the ejectment, until the cause was decided, and is informed it could have been successfully defended in equity, if he had received notice.

That complainant has purchased the title of the heirs at law of Lewis, at a price below that at which defendant sold to Talbot, without notice to, or consultation with defendant, thereby precluding him from going into equity to obtain the title, and that no request was made to him, to make good the warranty, or complete the title before filing the bill.

At the November term, 1842, the death of Jones was suggested, and *sci. fa.* ordered, to make his representatives parties. A *sci. fa.* issued on the 19th January, 1843, but was never returned.

At the June term, 1843, the death of Zachery Jones, one of the executors, was suggested, and leave given to file a bill of revivor, which was filed on the 19th June, 1844.

On the 23d May, 1845, the plaintiffs in error answered the bill, admitting most of the facts stated in it. That Gabriel Jones died 23d September, 1842—that they as his executors qualified 5th October, 1842—admit that a *scire facias* issued, but denying any knowledge whether it ever came to the hands of the sheriff of Sumter. They deny that any presentation of the claim was ever made to them, and plead the statute of *non-claim*, in bar of the suit.

Evidence was taken, the effect of which, so far as it is material, will be found in the opinion of the court.

The cause coming on to be heard, the Chancellor considered that the proof was full, as to the knowledge of the ex-

ecutors of the existence of the claim. That their father had
set apart a sum of money in his lifetime for its discharge.
That they had delayed the settlement of the estate, waiting
the issue of this suit, and had employed a solicitor to defend
them if necessary, who had full knowledge of the subject.
These facts the court considered as constituting an excep-
tion in this case, and took it out of the general rule, that a
presentment in fact must be made.

The court also decreed that the mistake be rectified, and
that the executors were not entitled to the benefit of the pur-
chase made by the complainant, of Lewis' heirs; but that
they make compensation by paying $15 per acre, upon the
omitted land, with interest from 10th January, 1841, the
date of the purchase by the complainant, from the heirs of
Lewis.

From this decree this writ is prosecuted.

ALEX. GRAHAM and J. B. CLARKE, for plaintiff in error,
made the following points:

First—1. The party has the right to interpose the plea of the
statute of limitations, in bar of a bill of revivor. [Story's Eq.
Pl. § 831; Hollingshead's case, 1 P. Wms. 742; Travis v.
Tartt, 8 Ala. Rep. 574.]

2. The statute of non-claim is, in effect, a statute of limi-
tations, more special however in its requirements than the
general law, and may be pleaded in bar of a suit in equity.
[Burditt v. Drew, Ex'r, 8 Pick. 103.]

3. The statute is not one that the administrator or execu-
tor may or may not plead at his discretion, but is one that he is
bound to plead, or be personally liable. [McBroom v. Gov-
ernor, 6 Porter, 32 ; Gookin v. Sanborn, 3 N. H. Rep. 491.]

4. When interposed, it is a complete bar to the revivor of
the suit. [Clay's Dig. 195, § 17; McBroom v. Governor, 6
Porter, 42; Evans' Adm'r v. Norris, Stodder & Co. 1 Ala.
Rep. 511; Jones v. Pharr, 3 Ala. Rep. 283; Bank of Alaba-
ma v. Gibson's Adm'r, 6 Ala. Rep. 814; Tartt v. Travis, 8
Ala. Rep. 574.]

5. The claim must be actually presented, and the execu-
tor possesses no power to dispense with the formal presenta-
tion of the claim to him. [Clay's Dig. 195, § 17; McBroom

v. Governor, 6 Porter, 42; Scott v. Hancock, 13 Mass. Rep. 162; Brown v. Anderson, Ib. 201; 15 Ib. 6.] The service of a writ is not a presentment. [Bigger's Adm'r v. Hutchings & Smith, 2 Stew. 445.]

Second—1. Jones was not entitled to the benefit of the purchase by Lightfoot of Lewis' heirs. Lightfoot did not account to Lewis' heirs for use and occupation, but purchased the land at $398 less than Talbot had paid Jones, and got credit for one and two years, in two payments, the interest on which would have been $288, making together $686, for which the Chancellor made no allowance.

2. The recovery in ejectment was no evidence against Jones, of eviction, by paramount title. [Prewitt v. Keaton, 3 Bibb, 282; 1 Litt. Rep. 109.]

3. Lightfoot cannot claim to be discharged from the relation of vendee of Jones, and consequently any purchase he made, must inure to the benefit of Jones' executors. [Meadows v. Hopkins, 1 Meigs' Rep. 181; 2 Am. Ch. Dig. 604; Galloway v. Finlay, 12 Peters' Rep. 264; Van Meter v. Griffin, 4 Dana, 91; Corley v. West, 2 Bibb, 569.]

Third—Where there is no necessity for a resort to Chancery, the complainant will be taxed, as well with the costs of this court, as the court below. [Langdon, &c. v. Roan's Adm'rs, 6 Ala. 531.]

It does not appear that there was any necessity to resort to this court, or, that if Jones had been applied to, he would not have corrected the mistake. [Beck v. Simmons and Kornegay, 7 Ala. 71.]

Fourth—If Lightfoot had applied to Jones to correct the deed, and Jones had made the correction, Chancery would have had no jurisdiction.

MURPHY, contra—

1. Lightfoot could not maintain the action of covenant, and show the mistake by parol testimony. See Fitzhugh v. Runyon, 8 Johns. Rep. 292; 3 Starkie on Ev. 1018, 1027; 4 Cruise's Dig. 287; also Jackson ex dem Houseman v. Hart, 12 Johns. Rep. 77.

2. Equity will rectify the mistake, and at the same time award a recompense in damages for the value of the lands of

which Lightfoot was evicted. [Parsons v. Hosmer, 2 Root's Rep. 1; 1 Story's Eq. 164 *et seq.*; Gillespie v. Moore, 2 John. Ch. Rep. 585; De Reimer v. De Cantillon, 4 Johns. Ch. R. 85.]

3. As to the effect of the statute of frauds, see 1 Story's Eq. 169.

4. Lightfoot may come in Talbot's place as assignee, or privy in estate. See 1 Story's Eq. 178.

5. The statute of non-claim is not available to the defendants in this case, because the record shows that the death of testator was suggested at the first term of the court, and *sci. fa.* issued according to the Rule, 15th, for the Regulation of Practice in Chancery. [Clay's Dig. 613.] Lightfoot made his application to the Register for a *sci. fa.* and had it issued. He did all that he could do, and by analogy to the case of McGregor and Darling v. Hale, 3 Stew. & Porter, 397. He should not suffer for the neglect of the officer.

6. Our statute says all *claims*, &c. The Connecticut statute of non-claim uses the same word *claims*. In Pendleton v. Phelps, 4 Day's Rep. 478, *claim* means *debt*.

7. This was not a *debt*, could not be sued for at law, but depended upon *a contingency*, whether the *mistake* could be *rectified*. If Jones could have corrected the mistake, then there would have been no money demand. [Griswold v. Bigelow, 6 Conn. Rep. 259; see *particularly*, Bachus v. Cleaveland, Kirby's Rep. 36; also, Hockley v. Merry, 2 Strange's Rep. 1043; Neil, use, &c. v. Cunningham's Executors, 2 Porter's Rep. 171; Pendleton v. Phelps, 4 Day, 476.]

8. In this case, no presentation necessary, as executors had full notice of the suit in lifetime of testator, and after his death came several times to Eutaw, and employed counsel to attend to it before the expiration of eighteen months. [Backus v. Cleaveland, Kirby's Rep. 36.]

9. Executors kept the estate together awaiting the determination of this suit. [See again Backus v. Cleaveland, *supra.*]

10. The employment of the same solicitor to attend to the case, and the offer of an additional fee, is full evidence of

notice to the executors, with whom the solicitor states executors had several communications.

11. None of the cases cited from Ala. Rep. show, that when a suit is pending, and it is actually known to executor, that presentation is necessary.

ORMOND, J.—We are entirely satisfied, that upon the case as made by the bill, the complainant is only entitled to the difference between the price paid for the land, and the sum at which it was purchased by him from the heirs of Lewis. Whatever might be the rule at law, in such a case as this, where no notice was given, the warrantor of the pending suit for the land, which resulted in the eviction— and especially when the subsequent purchase was made without application to the warrantor, so as to enable him, by making the purchase, to comply with the warranty, he must be held to have made the purchase for his own security. As the complainant has resorted to a court of chancery for relief, he must do equity—all that in equity and justice he can ask, is, to be reimbursed, and placed in the same condition as if the warrantor had procured the conveyance to be made. It cannot be tolerated, that he should, by a secret purchase, be permitted to speculate upon what is admitted in the bill to be a mistake. The case of one filing a bill to avoid the payment of usury, who is always required to pay the sum actually due, is the same principle in another aspect. And it may be stated as a universal proposition, that a court of equity never voluntarily lends its aid to do injustice.

This principle was considered as of too much moment to be passed over, but it becomes wholly unimportant, upon the further investigation of the cause, because we think the statute of *non-claim*, interposed by way of plea by the executors, is an effectual bar to the revival of the suit against them.

The act declares, that "all claims shall be presented to the executor, or administrator, within eighteen months after the same shall have accrued, or within eighteen months after letters testamentary, or letters of administration, shall have been granted to said executor or administrator, and not after; and all claims not presented within the time aforesaid, shall

be forever barred from a recovery." The act contains a saving clause as to infants, &c. which does not apply to this case. [Clay's Dig. 195, § 17.]

The question to be decided is, what is meant by a *presentment* of the claim, to the executor or administrator?

If knowledge merely, of the existence of the claim by the personal representative is sufficient, in any conceivable case, (except where the debt is due to the personal representative himself,) it must be in this. The executors are the sons and heirs of the deceased, and it is clear from the proof, that they were perfectly aware of its existence, as they had consulted counsel about it. But in our opinion, knowledge merely of the existence of the claim is not sufficient, and to hold that it was, would be in effect to repeal the statute. At least it would introduce so many exceptions to the rule, that the rule itself would be rendered nugatory. The statute is in effect, a statute of limitations, passed as much for the benefit of the heir, and distributee, as of the personal representative, and to secure the speedy settlement of estates; and is as obligatory in a court of chancery, as at law. It is emphatically a statute of repose, and includes judgments, to which the administrator is not made a party, as well as any other demand. [Thrash v. Sumwalt, 5 Ala. 13.] The plain and obvious design of the statute was, to enable distributees, and legatees, to demand a distribution of the estate, at the expiration of eighteen months from the grant of letters, unless it was necessary for the executor, or administrator, to retain it longer in his hands, for the purpose of paying debts. To justify him in so doing, he must be furnished with the evidence that claims exist against the estate, and will be enforced. This evidence the statute requires, to be a *presentment* of the claim, and in our opinion, nothing short of an actual presentment will satisfy its demand.

The service of a *scire facias* upon the personal representative to revive a judgment, or a suit in progress within the eighteen months after the grant of letters, would doubtless be a presentment of the claim. The effect of the attempt to revive this suit, by *scire facias*, instead of by bill of revivor, need not be considered, as it was never executed or returned. The bill of revivor was not filed, until after the expiration of

the time for the presentation of claims; the plea therefore, of the executors, of the statute of non-claim, is fully sustained by the record, as it is not pretended there was a presentation in fact made.

At an early period, this court held, that a suit commenced against the personal representative, within eighteen months, to which the plaintiff submitted to be non-suited, was not a sufficient presentment of the claim. That the statute required an actual presentment, and the mere service of a writ, afterwards abandoned, was not a *presentment*. [Bigger, Adm'x, v. Hutchings and Smith, 2 Stew. 448.] This case has been acquiesced in from that time to the present; at least it has not been judicially questioned, except in the case of Garrow v. Carpenter and Hanrick, 1 Porter, 374. But it is to be observed, that the facts of this last case, were entirely dissimilar, and although some doubt is intimated about the propriety of the decision in 2 Stewart, the court expressly disclaimed any intention of overruling it. The leading principle of the case, that there must be an actual presentment of the claim within eighteen months, or something done by the party equivalent to it, is admitted. Whether the commencement of a suit against the personal representative, to which a non-suit was taken, was such an equivalent, the court in the case cited from 1 Porter, were not called on to decide; nor are we, as nothing was done here, but to suggest the death of the testator, and the suing out of a *scire facias*, which was neither executed or returned. The 15th rule of practice, (Clay's Dig. 613,) applies to cases where no answer is required from the personal representative, and authorizes the register to revive the suit, if no cause is shown to the contrary, when the process is returned executed. It is clear this ineffectual effort to revive the suit, cannot be considered as a substitute for a presentment of the claim.

It is further argued, that the statute does not apply to this case, because it is alledged the claim depended on a contingency. This contingency is supposed to result from the fact, that there was a mistake in the deed, which the complainant was compelled to ask the aid of a court of chancery to rectify, and that as it could not be known, until the court or-

4

dered the mistake to be rectified, whether any claim existed, it was contingent, and no presentment was necessary.

There are doubtless cases of contingent liability, which may never accrue, and which therefore there is no necessity to present to the personal representative. The case of a surety is of that class, he has no claim, or demand, against his principal, until he pays the debt : until then it is uncertain whether the relation of debtor and creditor will ever subsist between him and his principal, his *claim*, (if claim it can be called,) or, to speak with more precision, his *liability* to pay the debt, is contingent ; it may never happen ; and need not therefore be presented, until the event occurs. Such was the case of Neil v. Cunningham, 2 Porter, 173, and see Huie v. Pinkston, 9 Ala. 252.

A contingency, excepted from the operation of the statute, cannot depend upon the action of the court in granting or refusing relief. If the party is not entitled to a judgment, or decree, at the hands of the court, he has no claim against the estate, and there is an end of the controversy. If he is, it cannot be considered as contingent, whether it will be granted or refused. In this case, upon establishing the fact of the mistake in the deed, and the injury consequent thereon, the redress was as certain as upon an instrument in writing for the payment of money. Whether a claim exist, or not, does not depend upon the proof by which it is established, or the forum in which relief must be sought, and indeed, the argument, if allowed, would go the entire length of repealing the statute.

The statute requires the presentation of the claim, within eighteen months after it has accrued, not, it will be observed, after the *right of action* has accrued ; therefore, a claim payable either presently, or in future, must be presented. In King & Barnes v. Mosely, 5 Ala. Rep. 610, this principle was applied to a warranty of title, and it was held, that as soon as it was converted into a money demand, it became a claim, which must be presented to the personal representative. See also this principle further illustrated in Pinkston v. Huie, 9 Ala. 252.

When did the claim accrue in this case ? It accrued when the complainant was evicted by a title paramount, from the

land which the deceased intended to sell, which he supposed he was selling, and which Talbot, the vendee, supposed he was buying, and obtaining possession of. Then at least, if not previously, his right to be refunded the purchase money arose.

This case certainly has the appearance of hardship, as it is evident the money is due from the deceased, and the omission to present the claim to the executors, has in this instance worked no prejudice to the estate. But we feel constrained to adhere to the plain and explicit declarations of the statute: that a claim not presented within eighteen months after it accrues, or after the grant of letters of administration, shall be forever barred. The proviso of the statute guards against unintentional omissions to make presentment, but it must have been contemplated, that losses would accrue from the negligence of claimants. This was doubtless considered as a small evil, when compared with the magnitude of the principle involved—the speedy and final settlement of the estates of deceased persons. We feel it our imperious duty, to enforce this statute according to its spirit, as well as its letter, and thus make it what it was intended to be, a final limitation of suits, after the period provided for has elapsed.

Let the decree of the Chancellor be reversed, and a decree be here entered, dismissing the bill of revivor.