## HALLETT & WALKER, Ex'rs of J. Kennedy, v. THE BRANCH BANK AT MOBILE.

1. A notice of the non-payment of a promissory note, personally served on the executor of an endorser of the note, or which is shown to have come to his hands, although it may come from a notary protesting the note, will be sufficient to withdraw the claim from the influence of the statute of non-claim, if it describe the note with accuracy, and informs the personal representative, who the holder is, and that he looks to him for payment.— ORMOND, J., dissenting.

Error to the Circuit Court of Mobile.

ASSUMPSIT by the defendant in error, against the plaintiffs in error, as executors of Joshua Kennedy, endorser of a promissory note.

Upon the trial of the cause, as appears from a bill of exceptions, the plaintiff introduced Edwin Rust, a notary public, who proved, that he either gave the notice personally, or left the notice of non-payment, and protest, mentioned in his protest, at the office of Wm R. Hallett, at the time mentioned in the certificate of protest ; but he could not state to whom it was directed, whether to Kennedy or Hallett, but that either Hallett or Kennedy's name, was on it. At the time this notice was alledged to have been given, Kennedy was dead, and Hallett and Walker had qualified as his executors. The certificate endorsed upon the protest, referred to in the evidence of the notary, is in these words : "Notices of protest given to the endorser the same day."

The defendants moved the court to instruct the jury, that
25

Hallett and Walker, ex'rs, v. The Branch Bank at Mobile.

the evidence offered of notice of protest, though it might be sufficient evidence of that fact, was not sufficient evidence of a presentment of the claim to the executor, to prevent the bar of the statute of non-claim, which the court refused, and instructed the jury, that the notice of protest by the notary, was a sufficient evidence of presentment to the executors, to take the case out of the statute of non-claim; and that if Hallett got the notice, no matter how directed, they could on this proof, find that the claim was sufficiently presented thereby to the executors, so as to avoid the plea of the statute of non-claim. This was excepted to, and is now assigned as error.

STEWART, for plaintiff in error. The appellants contend that the notice of protest by the notary, had not the effect of a presentment of the claim; and that the notary had no authority to make such a presentment by virtue of his office. [See Jones v. Lightfoot, 10 Ala. 17; Boggs v. Br. Bank, ib. 970; Badger v. Steele, ib. 944; Thrash v. Sumwalt, 5 ib. 13; Hollinger v. Holly, 8 ib. 454; Travis v. Tartt, 8 ib. 577; Bigger v. Hutchings, 2 Stewart, 448; Kenan v. Saxton, 13 Ohio 41; P. & M. Bank v. King, Upson & Co. 9 Ala. Rep. 279, as to agent.]

CAMPBELL and LESSESSNE, contra. The defendant contends, that a notice of a protest of a note, endorsed by his testator, served upon the executor *personally*, fulfils the requisitions of the statute of non-claim. The object of the notice is to inform the executor that a contingent liability of his testator has become absolute, and to warn him that the estate is looked to for payment. The object of a prosecution is to give the same *information*, and to enable the executor to take the necessary precautions. [2 Wms. on Ex'rs. 678, 679; 2 Smedes & M. 403.] The proof of the claim, it was not necessary to submit to the executor. [Jones v. Pharr, 3 Ala. 283.] This court has decided that the notice afforded in process, served upon the executor, would, in certain cases, be equal to a presentment. The reason is much stronger in the case before the court. [10 Ala. Rep. 17.]

ORMOND, J.—The question involved in this case, has been recently fully considered by this court, in the case of Jones v. Lightfoot, 10 Ala. 17, and Boggs, Ex'r, v. The B. Bank, Ib. 970. These cases hold, that knowledge of the fact of the existence of the debt, by the personal representative, no matter how full, or perfect it may be, will not dispense with a presentment of the claim to the personal representative, as required by the statute. The reason upon which these decisions are based, is, that without a presentment, the personal representative cannot know that the estate he represents, is looked to for payment of the debt; yet that such knowledge is essential to him, because he may be called on after the lapse of eighteen months for distribution of the estate, and can only refuse to distribute the estate, by showing outstanding claims against it. But, as mere knowledge of the existence of a claim against the estate, by the personal representative, would, if sufficient to excuse him from distributing the estate, postpone such distribution for an almost indefinite period, it was evident the legislature designed, that a presentment of the claim, to the personal representative, should alone be sufficient proof, that it would be asserted against the estate, and justify him in retaining assets to discharge it, in the event it should be ascertained the estate was liable to pay it.

It was also admitted, there were certain acts, equivalent in legal estimation to a presentment *in pais* to the personal representative; such as the prosecution of a suit within the time required by law for the presentment, or the revival of a suit, or judgment, by *scire facias* against him, within the same period; as these were unequivocal acts, and notice to the administrator, not only of the existence of the claim, but of an intention to assert it against the estate. The potency of this last mentioned ingredient, in any act, which is relied on as an equivalent for an actual presentment *in pais,* is shown by the case of Boggs v. The B. Bank, *supra;* where it was held, that a judgment obtained against the personal representative, which was afterwards vacated, was not equivalent to an actual presentment *in pais.* And in like manner, in the old case of Bigger v. Hutchinson, 2 Stewart, 448, that the suing out of a writ, within the time required by law,

but which was not prosecuted to judgment against the administrator, would not satisfy the terms of the statute.

I am unable to distinguish these cases from the present. Conceding that a notice to the personal representative, of the dishonor of a note, upon which his testator, or intestate, was an indorser, does inform him, as it doubtless does, of the existence of the claim, it gives him no information whatever of another fact, equally as important, that the estate he represents is looked to for its payment; and if this is wanting, it is nothing more than mere knowledge of the existence of the claim, which we have seen is insufficient. Indeed, notice to charge a party to a bill, or note, of its dishonor, may be, and in most cases is given, through the medium of the post office; and if placed in the post office at the proper time, will be evidence of notice, whether it reaches the party intended to be notified or not. Nor is a notice of the dishonor of a bill, or note, unequivocal proof that payment is demanded. The money may be made from other parties to it, primarily liable to the holder, and in such a case, the notice would be wholly inoperative.

For these, and other reasons which might be adduced, I am of the opinion that such a notice is not equivalent to a presentment to the personal representative, which was not only designed by the statute to give him notice of the existence of the claim, but also to apprize him that payment was demanded; and to afford him an opportunity of paying it, if he thought proper. But my brethren think that a notice personally served on the administrator, or which is shown to have come to his hands, although it may come from a notary protesting the bill, or note, will be sufficient to withdraw the claim, from the influence of the statute of non-claim, if it describe the bill, or note, with accuracy, and informs the representative who the holder is, and that he looks to the administrator for payment. That is substantially, what the presentment of a demand to the administrator should contain, and that it makes no difference, that it comes from the notary, as he is in that capacity authorized to receive payment.

We have been referred to the case of Helm v. Smith, 2 Smedes & M. 403, decided by the supreme court of Mississippi, upon a statute similar to ours, where the doctrine as-

serted by my brethren, is certainly fully sustained. The facts of that case, were, that a notice of the dishonor of a mercantile instrument, was sent by mail directed to the indorser, who was dead at the time the notice was sent, but the post office to which it was directed, was the same at which the executor of the deceased was in the habit of receiving his letters. There was no positive proof that the notice came to the hands of the executor, but there were facts in evidence from which such an inference might, without impropriety, have been drawn by the jury. The court held, that such a notice, if received by the executor, was a sufficient presentment of the claim to the executor, to bar the statute of non-claim. They came to this conclusion, because they held, the whole purpose of the statute, was to give the personal representative notice of the *existence* of the claim. "It would therefore, (in the language of the court,) be legitimate, to show a notice of such a claim, to an executor or administrator, by any legal evidence, which would establish the fact, of their *knowledge of its existence*, to the satisfaction of a jury, because the design of the statute, would thereby be accomplished."

Upon this theory of the design of the statute, the decision cited was certainly correct; but that is not our view of the object the Legislature had in view in its passage. This court, by a series of decisions, commencing under its former organization, and continuing down to a very recent period, has held, that knowledge of the existence of the claim by the personal representative, was not of itself sufficient, to arrest the operation of the statute. Thus, in the recent case of Jones v. Lightfoot, 10 Ala. 24, this court say, "if knowledge, merely, of the existence of the claim, by the personal representative, is sufficient in any conceivable case, (except where the debt is due to the personal representative himself,) it must be in this." Yet the court resisted the strong temptation, which constantly assails all courts, of bending the law to suit the abstract justice of the case, and adhered to the rule, *that knowledge merely* was not sufficient; and the debt was lost, although the question arose in a suit in equity, and it was shown that the executors, who were the sons of the deceased, knew all about the claim, had consulted and retained

counsel to defend the suit, if revived against them, and had in fact kept in reserve a sufficient sum to pay the debt, if the suit was revived and went against them.

That a notice such as this, is not equivalent to a presentment, is manifest, from its wanting the essential ingredient, upon which all our decisions hitherto have been based—*the information that the estate is looked to for payment.* I do not understand, that a notice to charge a party to a negotiable instrument, must in express terms inform him, that he is looked to for payment. His liability to pay, is a legal consequence of his being notified of the dishonor of the paper. But if it contained this express language, it would not in my opinion vary the case. It by no means follows, that because a party to a bill, is notified of its dishonor, that he will ever be called on for payment. The habit is, for the holder to notify all the parties to a bill, but if payment is made by a prior party on the instrument, the notice would be entirely nugatory. How, it may be asked in such a case, is the administrator to know, that the estate he represents will ever be called on for payment; and how can he refuse, if called on by the distributees to make distribution, because he has received such a notice? What length of time must the estate be tied up, waiting this possible contingency?

The presentment contemplated by the statute, is one which will not only inform the administrator that the estate is looked to for payment, but such as would also give him the power, if he had the means, to pay the debt. I will not stop to controvert the position, that a payment to the notary would be sufficient. He has the note for the purpose of demanding payment, and of course may receive the money if tendered. In this particular he is like any other agent, who has the note for collection. But if payment is not made, and he protests for non-payment, and gives notice, his agency is at and end; he has no longer any right to receive the money. He returns the bill to his principal, and his agency is at an end. It would be a most alarming doctrine, that the notary was invested with power to receive the money, upon a note, or bill, after protest and notice of its dishonor. This is a point which it seems to me is too clear for argument, and

it appears to result as a necessary carollary from this, that the information derived from the notice, is knowledge merely, that such an instrument exists, upon which the deceased was a party.    It is not a presentment of the note for payment, because the administrator cannot pay it if he desired to do so.

For these reasons my opinion is, that the charge of the court was erroneous, and the judgment should be reversed: but the majority of the court thinking otherwise, it must be affirmed.