# POLLARD vs. SCEARS' ADM'R.

[FINAL SETTLEMENT OF ADMINISTRATOR'S ACCOUNTS—APPEAL BY DISTRIBUTEE
FROM ALLOWANCE OF CERTAIN CREDITS.]

1. *When administrator is bound to plead statute of limitations.*—An administrator is not bound to plead the statute of limitations, when he has personal assets sufficient to pay the debts ; but a different rule prevails, where a resort to the realty is necessary to raise a fund for that purpose.-

2. *What is sufficient presentation of claim.*—At a meeting between the administrator, and several of the distributees of an estate, two of whom claimed to hold debts against the deceased, the account in reference to the transaction out of which the claims arose was stated in writing, with the assistance of the administrator, who then asked one-of them, "if that item was all he claimed"; to which the latter replied, " that it was all they claimed": *Held*, that this was a sufficient presentation to avoid the statute of non-. claim.

APPEAL from the Court of Probate of Greene.

On the final settlement by Lewis F. Leonard of his administration on the estate of Martha Scears, deceased, at the October term of said probate court, 1855, the following proceedings were had: "It appeared in evidence, that the heirs of the said estate were, Willis Pollard, Richard Pollard, Lewis F. Pollard, and the heirs of Austin Pollard, deceased, (namely, Austin Pollard, jr., Oscar Pollard, Osborne H. Pollard, and Martha W. Armstrong, wife of Thomas T. Armstrong,) who were children and grand-children by her first husband, and John and William Scears, children by her second husband; and that said Lewis F. Leonard was appointed her administrator on the 24th November, 1853. It further appeared in evidence, that one Samuel Scears departed this life, intestate, in 1835, leaving his widow, the said Martha Scears, and two infant children, the said John and William Scears; that Austin Pollard, sr., was appointed administrator of the estate of said Samuel Scears, and died in 1853, without having made a final settlement of his administration; that said Martha, John and William Scears continued to live on the plantation, and, after they became of

age, worked their hands and land together, as co-partners with said Martha, until about the year 1847; that said Martha received from the said Austin Pollard, administrator as aforesaid, on or about May 1, 1841, $800 belonging to said estate, in and to which said John and William Scears were entitled to a share of one-third each; that with this money said Martha bought two negroes, taking the bills of sale and title to herself, and held them as such until her death in 1853; that said Martha, on or about January 1, 1846, sold the crop of cotton raised by them jointly in 1845, and received the proceeds, about $600, which she invested in a negro boy, taking the title in her own name, and holding him as her property until her death; that the said Lewis F. Leonard, as her administrator, sold said slaves, and the proceeds of their sale is a part of the fund now to be divided."

"It further appeared that, in August, 1854, when Austin Pollard, jr., as administrator of his father, was about to make a final settlement of his administration on the estate of said Samuel Scears, said John and William Scears proposed to charge him with said $800 received by said Martha as aforesaid; that Lewis F. Pollard then agreed with the parties, that if that claim was not brought into that settlement, he, as administrator of their mother, would admit that she had received said sum of money, that he knew she had received said $600, and that, on a settlement of the co-partnership business of said Martha, John and William Scears, he would allow the same, if they would bring in or render an account of money used by or advanced to them; and that said administration was then settled, without charging said $800. It further appeared in evidence, that the heirs of said Martha Scears, or some of them, met at the house of John Scears, in February, 1855, for the purpose of preparing for a settlement of said co-partnership business, and also a final settlement of her estate; that the said items then became the subject of conversation, and said Lewis F. Pollard (the administrator) then asked Austin Pollard to state the account hereto attached, which he then wrote down as directed, and called upon the said John and William Scears to present their accounts, in regard to their advancement and partnership claim, similar to the one which he prepared; that he

asked John, at the same time, if that item of $800 and $600 was all he claimed against said estate; and that John replied, they were all they claimed. The said John and William Scears, nor either of them, ever rendered any account of claims or advancements, as the said Pollard then proposed and afterwards requested, until the statement or settlement hereto attached was made by and between them on the 27th October, 1855. It further appeared in evidence, that the said Lewis F. Leonard, administrator as aforesaid, on the 27th October, 1855, for the purpose of making a final settlement of said estate, made the settlement with said John and William Scears which is hereto attached, based upon said settlement made between said Lewis F. and Austin Pollard as aforesaid; that he thereupon paid said John Scears $250 12, and said William $619 57, and took from each of them a receipt for the respective sums, and also a release for all liability against the estate of said Martha Scears for said co-partnership and other claims."

The two accounts above referred to' are made exhibits to the bill of exceptions. The first is an account current (the account stated between Lewis F. and Austin Pollard) between Martha Scears and the' said partnership, in which said Martha is charged with said sums of $800 and $600, and credited with the annual hire of the negroes; interest being computed on both sides of the account, and a balance struck against her of $1397 66. The other exhibit is the statement of the accounts between said administrator and John and William Scears; in which the administrator charges himself with said sum of $1397 66 and interest thereon, and charges John Scears with $369 45 as the amount of his account and interest; and the aggregate of these two· sums is divided equally between Martha, John and William Scears, being $619 57 to each.

"The said Lewis F. Leonard, as administrator as aforesaid, then went into a final settlement of the estate of said Martha Scears, and, amongst other vouchers, presented and offered to the court for allowance the two receipts of said John and William Scears, for said sums of $250 12 and $619 57, taken from them as aforesaid. Thereupon said Austin Pollard, one of the heirs, objected to the allowance of said vouchers, and assigned as grounds of objection, 1st, that they were barred

by the statute of non-claim; 2d, that they were barred by the statute of limitations; and, 3d, that they were not correct or just claims." The court overruled these objections, and allowed the said vouchers; and to this decision the said Austin Pollard excepted.

The allowance of these vouchers is now assigned as error.

S. W. COCKRELL, for the appellant.

STONE, J.—An administrator, who has personal assets, in value sufficient to pay the debts of his intestate, is not bound to plead the statute of limitations.—Knight v. Godbolt, 7 Ala. 304; Hall, Weeks & Co. v. Darrington, 9 Ala. 502; *Ex parte* Perryman. and Wife, 25 Ala. 79. When a resort to the realty is necessary, to raise a fund to pay the debts, a different rule, for an obvious reason, prevails.—Bond v. Smith, 2 Ala. 660. In this case, we are not informed that the real estate was called into requisition, and hence conclude that the debts were paid with the personalty, the primary fund for that purpose.

It was also objected, that the debts in question were barred by the statute of *non-claim*, and that their payment by the administrator was in his own wrong. We do not think this objection sustained by the facts. Before the expiration of eighteen months after the administrator qualified, the claims of the creditors, which he afterwards paid, were formally stated in writing, in the presence, and with the assistance of the administrator; the creditors both being present. To a question addressed by the administrator to one of the creditors, asking if that item, referring to the account, was all he claimed, he replied, it was all *they* claimed. The claim of each creditor grew out of one and the same transaction, and the presentation of one was the presentation of both demands. Surely, this was enough to inform the administrator of the nature and amount of the demand, and that the claimants looked to the administrator for payment. The presentation was sufficient.—Hallett & Walker v. Br. Bk. Mobile, 12 Ala. 193; Jones v. Lightfoot, 10 *ib.* 17; Jones v. Pharr, 3 *ib.* 283; Hunley v. Shuford, 11 *ib.* 203.

It was further objected to the allowance of said credits,

that they were not just demands against the intestate. If it were allowable, in the form in which the question is raised, to consider of the sufficiency of the proof on this point, we would answer, that the bill of exceptions contains the distinct statement, *as a fact*, that the intestate had received the two sums of money which created the liability; and that the said creditors were entitled each to one-third of each of said sums. But this question is not presented in such form as to authorize its revision here.

The judgment of the probate court is affirmed.